**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

STACEY CLARK,
<u>Plaintiff-Appellant,</u>

v.

ARCHIBALD ALEXANDER, Acting

No. 95-1280

Executive Director, Alexandria
Redevelopment and Housing
Authority,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CA-94-1242)

Argued: March 4, 1996

Decided: May 30, 1996

Before LUTTIG, Circuit Judge, CHAPMAN, Senior Circuit Judge,
and CLARKE, Senior District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Senior Judge Clarke wrote the opin-
ion, in which Judge Luttig and Senior Judge Chapman joined.

_____

**COUNSEL**

**ARGUED:** Michael Gerhart Allen, LEGAL SERVICES OF
NORTHERN VIRGINIA, Alexandria, Virginia, for Appellant.
Michael Jay Weiser, Alexandria, Virginia, for Appellee. **ON BRIEF:**

Sylvia M. Brennan, LEGAL SERVICES OF NORTHERN VIR-
GINIA, Alexandria, Virginia, for Appellant.

_____

**OPINION**

CLARKE, Senior District Judge:

This appeal concerns the standard of review applicable in federal
civil rights cases challenging the decisions of local housing authori-
ties implementing the federal low-income housing assistance pro-
gram. See 42 U.S.C. §§ 1401-40. In Ritter v. Cecil County Office of
Hous. & Community Dev., this Court held that interpretive rules
adopted by local housing authorities should be afforded deference by
federal courts "only to the extent the agency's rules are not contrary
to the statute or regulation." 33 F.3d 323, 328 (4th Cir. 1994). In this
case, the Court is asked to determine the standard of review applica-
ble to housing authority adjudicative factfinding and decisions. The
District Court, in keeping with the Ritter decision, gave substantial
deference to the Alexandria Redevelopment and Housing Authority
(ARHA) and the reviewing hearing officer in granting ARHA's
motion for summary judgment. Clark v. Alexander , 894 F.Supp. 261,
263 (E.D.Va. 1995). For the reasons set out below, this Court agrees
with the decision of the district court and, upon de novo review,
affirms.

I.

Stacey Clark was a participant in the federal government's rent
subsidy program as administered by ARHA. The rent subsidy pro-
gram is overseen by the Department of Housing and Urban Develop-
ment and implemented in accord with Section 8 of the United States
Housing Act as amended. 42 U.S.C. § 1437f. In administering the
rental voucher system, HUD is authorized to "prescribe other terms
and conditions which are necessary for the purpose of carrying out the
provisions of this paragraph and which are consistent with the pur-
poses of this paragraph." 42 U.S.C. § 1437f(o)(11)(F). Relevant to
this case, HUD has promulgated regulations concerning the drug-
related criminal activity by recipients of rent subsidies and their fami-

2

lies. Specifically, it is the obligation of the family receiving federal rent subsidies to not "[e]ngage in drug-related criminal activity, . . . including criminal activity by any Family member." 24 C.F.R. § 882.118(b)(4) (1994). "Drug-related criminal activity" means (1) "the felonious manufacture, sale, or distribution, or the possession with intent to manufacture, sell, or distribute, a controlled substance," or (2) "the felonious use or possession (other than with intent to manufacture, sell, or distribute) of a controlled substance," where the use or possession occurs within one year of a public housing authority's decision to deny admission or terminate assistance under the program. 24 C.F.R. § 882.118(b)(4)(i)(A), (B) (1994)."Family" is defined in the regulations to include but is not limited to:

>   (a) An Elderly Family or Single Person as defined in this part,

>   (b) The remaining member of a tenant family, and

>   (c) A Displaced Person.

24 C.F.R. § 812.2 (1994); see also 42 U.S.C. § 1437a(b)(3) (same).

The public housing authority may terminate a participant's rent subsidy "[i]f the participant has violated any Family obligation" as set out in section 882.118. 24 C.F.R. § 882.210(d)(2) (1994). A termination based on participation in drug-related criminal activity must be based on a "preponderance of the evidence indicat[ing] that a Family member has engaged in such activity, regardless of whether the Family member has been arrested or convicted." 24 C.F.R. § 882.216(c)(1) (1994). The procedure for termination consists of a written notice from the housing authority stating the reasons for the termination. 24 C.F.R. § 882.216(b)(3)(i) (1994). The participant in the program must be given the opportunity for an"informal hearing." 24 C.F.R. § 882.216(b)(1)(ii) (1994); cf . 42 U.S.C. § 1437d(k) (mandating the creation of an "administrative grievance procedure" for tenants at each public housing authority receiving funds under Section 8). The informal hearing is set before a neutral hearing officer, is adversarial in nature, and is decided using a preponderance of the evidence standard. 24 C.F.R. § 882.216(b)(6) (1994).

3

On March 19, 1994, Alexandria police executed a search warrant for Ms. Clark's address and for a black male at that address. Probable cause for the search was provided by a confidential informant's tip that cocaine was being sold by a black male at that residence. Ms. Clark was not home at the time the warrant was executed. However, police detectives did find Ms. Clark's father and her estranged husband, David Clark, at the residence. During the search, the detectives seized quantities of heroin and associated drug paraphernalia from a dresser in the master bedroom. Detectives also uncovered two address books in the dresser and a two-foot long sword hidden between the bed and box spring. In the basement of the house, detectives confiscated a quantity of cocaine. At the time of the search, David Clark admitted to the detectives that the heroin and related drug paraphernalia found in the master bedroom were his. He also admitted ownership of the sword and the address books. Mr. Clark gave his address as that residence. Mr. Clark subsequently pled guilty to possession of heroin and possession of drug paraphernalia related to the March 19, 1994 incident.

On May 9, 1994, ARHA, through its executive director Archibald Alexander, informed Ms. Clark of its decision to terminate her housing assistance. The ARHA notice stated that the Alexandria police had received information that illegal drugs had been sold from her residence and that a resulting police search at her residence had led to the confiscation of drugs and drug paraphernalia. From this evidence, ARHA had concluded that family members had engaged in drug-related activity in her residence and that termination of assistance was authorized under federal regulations.

Ms. Clark exercised her right to an informal hearing, which took place on July 27, 1994, before Steven Zimmerman, a local attorney. At the hearing, Mr. Zimmerman heard testimony from Alexandria police detective Hassan Aden, who had been present during the execution of the search warrant, David Clark, and Stacey Clark. Detective Aden testified that he believed Mr. Clark to be a resident at Ms. Clark's apartment based on Mr. Clark's familiarity with the premises; statements of ownership of the drugs, drug paraphernalia, and personal items (address books and the silver sword) found at the residence; and statement that he did in fact live at the residence. David Clark admitted to ownership of the heroin and related paraphernalia

4

but denied any knowledge of the cocaine in the basement. He also stated that he never admitted to Detective Aden that he lived at the residence, nor had he admitted that he owned the silver sword. Ms. Clark testified that David Clark did not live at her household and that she had no knowledge of the use or possession of drugs in her household prior to the execution of the search warrant. Mr. Zimmerman upheld ARHA's decision to terminate, relying heavily on the testimony of Detective Aden and concluding that a "family member" at Ms. Clark's residence had been involved in drug-related criminal activity, warranting termination of benefits under 24 C.F.R. § 882.210.

Ms. Clark brought suit under 42 U.S.C. § 1983, alleging various procedural errors in the informal hearing and alleging that ARHA exceeded its authority in terminating her Section 8 benefits where no "family member" was involved in drug-related criminal activity. On plaintiff's motion for partial summary judgment and defendant's motion for summary judgment, the district court found in favor of defendant. The district court applied the standard articulated in Ritter. Clark v. Alexander, 894 F.Supp. 261, 263 (E.D.Va. 1995). The court found that the housing authority's basis for termination was not inconsistent with the applicable HUD regulations. Id. at 264. Following Ritter, the court afforded the decision to terminate "reasonable deference," and granted the housing authority's motion for summary judgment. Id. at 264-65. Plaintiff appeals on the sole issue of whether the district court erred in deferring to ARHA and the hearing officer's conclusion that David Clark was a "family member" for the purposes of the Section 8 regulations.

II.

A.

We review the district court's granting of summary judgment de novo. Ritter, 33 F.3d at 327; Haavistola v. Community Fire Co., 6 F.3d 211, 214 (4th Cir. 1993). Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as

5

a matter of law. See Celotex Corp. v. Catrett , 477 U.S. 317, 322-24 (1986).

The outcome on a motion for summary judgment is dependent not only on the standard of review, but also on the scope of review. That is, the focus of the court's inquiry is as important as the rigor of that inquiry. This action is brought under section 1983, which provides a cause of action for the deprivation of rights created by federal law. 42 U.S.C. § 1983. The Supreme Court has held that violations of federal housing laws by state agencies implementing these laws are actionable under section 1983 by Section 8 participants. Wright v. Roanoke Redev. & Hous. Auth., 479 U.S. 418, 429 (1987); see Ritter, 33 F.3d at 327 n. 3 ("we proceed on the assumption that[plaintiff] is entitled to sue for improper termination of Section 8 assistance when the termination is in conflict with federal regulation"); Holly v. Housing Auth. of New Orleans, 684 F.Supp. 1363, 1366 (E.D.La. 1988). The civil rights cause of action against a state agency implementing a federal program compels federal courts to uphold the letter of federal law while allowing agencies the discretion to perform their function of reasonably administering the federal program.

B.

The Court first reviews the deference the District Court gave to the factfinding of the hearing officer. Plaintiff contends that the factfinding of the hearing officer is to be afforded no deference in a section 1983 action and that the District Court was obligated to make its own findings of fact.

Plaintiff's argument misconstrues the nature of the informal hearing which is intended to provide pretermination review of housing authority decisions to terminate housing assistance benefits. See 55 Fed.Reg. 28541 (1990). This review is designed to comport with the due process requirements for public-welfare program termination prescribed in Goldberg v. Kelly, 397 U.S. 254, 266-71 (1970). See 55 Fed.Reg. 28541 (1990) ("PHAs must adopt written informal pretermination hearing procedures for participants, which fully meet the requirements of Goldberg v. Kelly"). The administrative review, while not in the form of a "trial," nevertheless serves "to produce an initial determination of the validity of the [housing authority's] grounds for

6

discontinuance of payments in order to protect a recipient against an erroneous termination of benefits." Goldberg , 397 U.S. at 266-67. Goldberg places five requirements on the termination process employed by a housing authority: (1) timely notice from the housing authority stating the basis for the proposed termination, (2) an opportunity by the tenant to confront and cross-examine each witness relied on by the housing authority, (3) the right of the tenant to be represented by counsel, (4) a decision, based solely on evidence adduced at the hearing, in which the reasons for the decision are set forth, and (5) an impartial decision maker. Goldberg, 397 U.S. at 266-71; see also Caulder v. Durham Housing Authority, 433 F.2d 998, 1003-04 (4th Cir. 1970), cert. denied, 401 U.S. 1003 (1971) (Goldberg applies to Section 8 terminations). Federal regulations set out the basic procedural requirements of informal hearings in almost literal compliance with Goldberg. 24 C.F.R. § 882.216(b)(6). Plaintiff has not challenged these regulations on due process grounds, and there is no allegation in this appeal of violation of these regulations.

The sole issue before the Court regarding the factfinding is the issue preclusive impact or degree of deference it may be afforded by courts in subsequent litigation, including cases brought under section 1983. The Administrative Procedure Act's regulation of the scope of court review, found at 5 U.S.C. § 706, is not applicable to housing authorities. Ritter, 33 F.3d at 327. However, the Supreme Court has held that in actions under section 1983, "federal courts must give [an] agency's factfinding the same preclusive effects to which it would be entitled in the State's courts." University of Tennessee v. Elliott, 478 U.S. 788, 799 (1986); see also United States v. Utah Construction & Mining Co., 384 U.S. 394, 421-22 (1966) (deference given to factfindings of federal agency acting in judicial capacity where parties had an adequate opportunity to litigate). In addition to having the agency's decision recognized in state court, the agency must be "acting in a judicial capacity" and the parties must have had "an adequate opportunity to litigate." Id.; Layne v. Campbell County Dept. of Social Services, 939 F.2d 217, 219 (4th Cir. 1991). ARHA's informal hearing is clearly judicial in nature in that it entails the presentation of evidence and a decision based thereon under specific legal standards. In this case, the hearing also complied with the Goldberg requirements including the opportunity to confront witnesses, the opportunity to be represented by counsel, and a hearing in front of an impartial decision

7

maker. It is therefore appropriate to conclude that plaintiff had an "adequate opportunity to litigate." The difficulty however lies with the preclusive effect in state court. A review of Virginia state court decisions and federal court decisions applying Virginia law finds no review of housing authority factfindings. Virginia has its own Administrative Process Act, Va. Code § 9-6.14:1 et seq., that, like the federal Administrative Procedures Act, governs the standard of review of state agency decisions. However, the Virginia act specifically excludes local or regional authorities, "including those with federal authorities." Va. Code § 9-6.14:4.1. State case law confirms that local housing authorities are not considered state agencies. See VEPCO v. Hampton Redevelopment & Hous. Auth., 217 Va. 30, 225 S.E.2d 364 (1976).

Nevertheless, this Court concludes that deference must be shown to the factfinding of local housing authorities. Plaintiff has received a termination hearing that comports with the requirements of due process as set out in Goldberg. ARHA's original decision to terminate was therefore validated by an administrative adjudicative process. That established, it follows that due process does not require an opportunity to relitigate the issues previously settled. See Detweiler v. Commonwealth of Va. Dep't of Rehabilitative Servs., 705 F.2d 557, 561 (4th Cir. 1983) ("The Supreme Court has not ruled that judicial review of the substantive decision of the hearing officials is required by the due process clause. On the contrary, its decisions imply that an administrative hearing is sufficient."). Deference to the findings of an impartial hearing officer in Section 8 program termination hearings results in no constitutional deprivation and advances the sound policy articulated in University of Tennessee and Utah Construction. See University of Tennessee, 478 U.S. at 798 ("the parties' interest in avoiding the cost and vexation of repetitive litigation and the public's interest in conserving judicial resources is equally implicated whether the factfinding is done by a federal or state agency") (citing Utah Construction, 384 U.S. at 422.).

The level of deference shown to the factfindings of a hearing officer is not absolute but it is significant. The regulations governing hearings state that factual findings must be "based on a preponderance of the evidence presented at the hearing." 24 C.F.R. § 882.216(6)(v); see also 55 Fed.Reg. 28541 ("Factual determinations relating to the

8

individual circumstances of the participant must be based on the evidence presented at the hearing."); accord Goldberg, 397 U.S. at 271 ("the decisionmaker's conclusions must rest solely on the legal rules and evidence adduced at the hearing"). Accordingly, to insure compliance with federal law, the reviewing court must be satisfied that the hearing officer's conclusions are supported by substantial evidence. Cf. 5 U.S.C. § 706(2)(E) (factfindings in agency hearings reviewed in court under a "substantial evidence" standard).

In this case, the District Court did not explicitly review the hearing officer's factfindings under a substantial evidence standard. Nevertheless, it is evident that the court set its level of deference to insure compliance with the federal regulations. The court stated:

> This Court finds that the AHRA [sic] and the hearing officer had ample evidence before them to conclude that David Clark was a member of Ms. Clark's family. Such information was contained in the initial letter from the AHRA [sic] and in the decision of the hearing officer. In fact, the hearing officer specifically states that he considered the totality of the evidence in coming to the conclusion that the AHRA [sic] had shown by a preponderance of the evidence that drug-related criminal activity occurred in the plaintiff's residence and that such residence was under her control.

Clark, 894 F.Supp. at 264. This Court concludes that the District Court did, in fact, apply the correct standard of review to the hearing officer's factfindings. The Court now reviews the District Court's conclusions de novo. Haavistola v. Community Fire Co., 6 F.3d 211, 214 (4th Cir. 1993).

The hearing officer heard testimony from Detective Aden, who executed the search warrant, and from David and Stacey Clark. The testimony of the detective conflicted with that offered by David Clark, in that Mr. Clark denied telling the detective that he lived at the residence and denied having claimed ownership of personal property at the residence. The hearing officer was also aware that the Alexandria police department's search was instigated by information that a black male was selling drugs from that residence. The hearing officer chose to believe the testimony of Detective Aden and con-

9

cluded that David Clark: (1) was found at Stacey Clark's residence in possession of heroin and related drug paraphernalia; (2) had ready access to the residence; (3) was intimately familiar with the layout of the residence; and (4) had personal belongings, including a sword hidden underneath a mattress, at Stacey Clark's residence. This Court agrees with the District Court that the testimony of Detective Aden accompanied by the details of the search warrant and the police report constitute substantial evidence supporting the factfinding of the hearing officer. That factfinding will not be disturbed.

C.

The Court next addresses the deference to be afforded ARHA's interpretation of the federal regulations in terminating Stacey Clark's Section 8 benefits. In Ritter v. Cecil County Office of Hous. & Community Dev., this Court recognized that "it is appropriate for us to show some deference to a state agency interpreting regulations under the authority of a federally created program." 33 F.3d at 327-28 (citing General Electric Co. v. Gilbert, 429 U.S. 125, 141 (1976)). Ritter created a two-step analysis for reviewing state agency interpretations of federal laws. First, the court should determine whether the state agency action is inconsistent with the federal housing provisions. Id. at 328. If there is no inconsistency, the court should afford the state agency's action reasonable deference, meaning that the action should be upheld unless it is found to be arbitrary or capricious. Id. at 328 (citing Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984)).

While Ritter dealt with a promulgated, interpretive rule by a housing agency, there is no reason to limit the Ritter analysis to such a setting. Whether an interpretation is promulgated or not may touch on the reasonableness of the state agency's interpretation. However, for the purposes of this case, the fact that an interpretation is not in the form of a promulgated rule will not prevent that interpretation from being afforded deference by courts if it is consistent with the federal provisions and is reasonable.

This Court now applies the standard of review established in Ritter to determine whether David Clark could be considered a member of Stacey Clark's family under the federal housing regulations. As set

10

out above, there is no specific definition of "family" in the federal housing statutes or regulations. See 42 U.S.C. § 1437a(b)(3) (definitions); 24 C.F.R. § 812.2 (1994) (same). In HUD's preamble to the regulations authorizing assistance termination for family involvement in drug-related criminal activity, HUD explained that "`family' in these programs includes only individuals who are occupying the same unit." 55 Fed.Reg. 28543 (1990). The hearing officer concluded that David Clark: (1) was found at Stacey Clark's residence in possession of heroin and related drug paraphernalia; (2) had ready access to the residence; (3) was intimately familiar with the layout of the residence; and (4) had personal belongings, including a sword hidden underneath a mattress, at Stacey Clark's residence. Based on these findings, which were supported by substantial evidence, the hearing officer concluded that David Clark was a "family member" for the purposes of 24 C.F.R. § 882.118. The Court holds that the findings of the hearing officer support the conclusion that David Clark "occupied the same unit" as Stacey Clark. Therefore, the hearing officer's conclusion, which was subsequently relied on by ARHA, is reasonable and not inconsistent with the federal regulations. Accordingly, ARHA's decision to terminate Stacey Clark's Section 8 benefits must be afforded deference.

III.

Plaintiff's conception of the standard and scope of review in this case would place federal courts and juries in the position of second-guessing every decision made by local housing authorities. The actual role of the federal courts is far more limited, even in actions brought under section 1983. In this case, the local housing authority drew reasonable conclusions from the evidence presented regarding David Clark's status as a member of Stacey Clark's family. These conclusions were not inconsistent with the federal regulations. As a matter of law, Stacey Clark's rights as created by the federal housing regulations were not infringed, and summary judgment for the defendant was warranted.

The judgment of the district court is affirmed.

AFFIRMED

11