Donald H. BESKIND, Karen Bluestein, Michael D. Casper, Sr., Michael Q. Murray, D. Scott Turner, Michael J. Wenig, Mary A. Wenig and Oakstone Winery, Inc., Plaintiffs,

v.

Michael F. EASLEY, in his official capacity as Governor of the State of North Carolina; Roy Cooper, Attorney General of North Carolina, Bryan Beatty, Secretary of the North Carolina Department of Crime Control and Public Safety; and George Bason, Chairman of the North Carolina Alcoholic Beverage Control Commission, all in their Official Capacities, Defendants.

No. 3:00CV258–MU.

United States District Court,
W.D. North Carolina,
Charlotte Division.

April 5, 2002.

James L. Fretwell, Mitchell, Rallings, Singer, McGirt & Tissue, Charlotte, NC, James A. Tanford, Indiana University School of Law, Bloomington, IN, Robert D. Epstein, Epstein & Frisch, Indianapolis, IN, Jeffrey L. Marchal, Epstein & Frisch, Indianapolis, IN, for plaintiffs.

James Peeler Smith, Isaac T. Avery, III, Amy L. Yonowitz, Robin P. Pendergraft, NC Dept. of Justice, Raleigh, NC, for defendants.

### ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

MULLEN, Chief Judge.

THIS MATTER is before the Court upon Plaintiffs' Motion for Summary Judgment and accompanying Memorandum, filed January 30, 2001; Defendants' Response, filed March 5, 2001; Plaintiffs' Reply, filed March 20, 2001; Defendants' Motion for Summary Judgment and accompanying Memorandum, filed January 31, 2001; Plaintiffs' Response, filed March 6, 2001; and Defendants' Reply, filed March 12, 2001.

## I. Introduction

Plaintiffs challenge several provisions of North Carolina's alcoholic beverage control ("ABC") system as unconstitutional violations of the Commerce Clause, and seek declaratory and injunctive relief. Defendants argue that the challenged provisions are constitutional and explicitly authorized by the Twenty-first Amendment and federal statutes. Both parties have moved for summary judgment. After a thorough review of the record, the Court finds that the challenged provisions are unconstitutional. The Court, therefore, denies Defendants' Motion for Summary Judgment and grants Plaintiffs' Motion for Summary Judgment.

## II. Description of Facts and Challenged Statutory Scheme

There are eight Plaintiffs in this action. Six of the Plaintiffs are North Carolina residents who enjoy drinking wine and would purchase wine directly from out-of-state manufacturers if such purchases were not prohibited under North Carolina law. Another Plaintiff, Oakstone Winery, is a small California farm winery that has received requests for wine from North Carolina residents. If Oakstone filled these requests, it would violate provisions of North Carolina's alcoholic beverage control statutes.[1] A final Plaintiff is a Michigan resident who would send gifts of wine directly to his parents in North Carolina, but is prohibited from doing so under North Carolina law.[2]

Defendants are various state officials, including the Governor of North Carolina, the Attorney General of North Carolina, the Secretary of Crime Control and Public Safety, and the Chairman of the North Carolina Alcoholic Beverage Control Commission, who play a role in the enforcement of North Carolina's alcoholic beverage control system. Each Defendant is sued in his official capacity.

Like many states, North Carolina regulates the sale and distribution of alcoholic beverages through a "three-tiered" system. The top tier consists of manufacturers or importers of alcoholic beverages. The middle tier is occupied by the assigned North Carolina wholesalers.[3] The bottom tier is comprised of retailers. An out-of-state manufacturer or importer must obtain a permit from the ABC Commission to sell to an in-state licensed wholesaler. Most, but not all, alcohol sold in North Carolina passes through these three tiers.

Chapter 18B of the General Statutes of North Carolina contains North Carolina's alcoholic beverage code ("ABC law") and codifies the three-tier system. Under the ABC law, it is unlawful to "manufacture, sell, transport, import, deliver, furnish, purchase, consume, or possess any alcoholic beverages except as authorized by the ABC law." N.C. Gen.Stat. § 18B–102. Violation of this section is a misdemeanor. *See* N.C. Gen.Stat. § 18B–102(b). The direct shipment of alcoholic beverages from out-of-state sources to in-state parties is prohibited by § 18B–102.1.[4] A violation of

1. Specifically, Oakstone Winery would be in violation of N.C. Gen.Stat. §§ 18B–102(a) and 102.1(a).

2. Mr. Turner would be in violation of N.C. Gen.Stat. §§ 18B–102(a) and 18B–109(a).

3. A wholesaler is assigned brands of the beverages it may sell within its territory, which is designated by the manufacturer or importer.

4. N.C. Gen.Stat. § 18B–102.1(a) states: "It is unlawful for any person who is an out-of-state retail or wholesale dealer in the business of selling alcoholic beverages to ship or cause to be shipped any alcoholic beverages directly to any North Carolina resident who does not hold a valid wholesalers permit under Article 11 of this Chapter."

§ 18B–102.1 is a felony. *See* N.C. Gen. Stat. § 18B–102.1(e).

It is thus illegal for an out-of-state retailer or wholesaler to ship alcoholic beverages directly to a North Carolina resident, and it is also illegal for a North Carolina resident to have the alcoholic beverages shipped into the state, unless the resident has a permit. *See* N.C. Gen.Stat. § 18B–109(a) ("No person shall have any alcoholic beverage mailed or shipped to him from outside of this State unless he has the appropriate ABC permit."). The ABC law contains an additional provision applicable to out-of-state wine vendors. That section states that "the holder of a nonresident wine vendor permit may sell, deliver, and ship unfortified and fortified wine in this State *only* to wholesalers, importers, and bottlers licensed under this Chapter." *See* N.C. Gen.Stat. § 18B–1114 (emphasis added). In this way, North Carolina attempts to ensure that all alcoholic beverages imported into the state pass through the three-tiered system.

There is a significant exception, however, to the three-tiered system. North Carolina wineries that are licensed to do business in the state may bypass the wholesaler and retailer and ship wine directly to North Carolina consumers.[5] As Defendants themselves aptly explain it:

> The Prohibition against such out-of-state purchase with direct shipment to the purchaser is effected by the operation of N.C. Gen.Stat. §§ 18B–102.1, –109, and –1114.... (Complaint ¶ 32) These statutes do not apply to local wineries and retailers, which may ship products directly to the consumer in the state pursuant to N.C. Gen.Stat. §§ 18B–1001(4) and –1101.... (Complaint ¶ 38). (Def.'s Mem. Supp. Summ. J. at 3.)

Thus, in-state wineries can bypass the middle tier (wholesalers) and bottom tier (retailers) and sell directly to consumers. Out-of state wineries, however, do not qualify for this exception, and therefore can sell wine only through the three-tier system, for "an out-of-state wine retailer cannot obtain a permit to ship directly to a North Carolina resident."[6] *Id.* at 7. Defendants admit facts supporting the existence of this discrepancy between treatment of in and out-of-state parties. They stipulate, *inter alia*, that sections 18B–1001(4) and § 18B–1101 permit in-state wineries to ship directly to North Carolina residents; but state ABC laws prohibit such shipments by out of state wineries. Clearly, the challenged statutes apply only to interstate (and not to intrastate) delivery of wine. *See id.* at 9. Defendants stipulate that "North Carolina's ABC laws prohibit.... the direct catalogue and Internet sales of alcoholic beverages from out-of-state sources to individuals within the state." *Id.*

---

**5.** Defendants emphasize that there are procedures whereby a North Carolina resident can obtain wines from out-of-state sources. However, as Defendants concede, "North Carolina's ABC laws prohibit ... the direct catalogue and Internet sales of alcoholic beverages from out-of-state sources to individual residents within the state." (Def.'s Mem. Supp. Summ. J. at 9.) No such prohibition applies to sales from in-state sources.

**6.** The exact disparity and its financial effect on North Carolina consumers is perhaps best described in the January 17, 2001 Affidavit of Russell Bridenbaugh, at 6, "For a California winery to sell its wine in North Carolina and in other states that prohibit direct shipment to consumers, it would have to go through an in-state wholesaler and retailer, each of whom would add their handling costs and profit to the cost of the wine. However, North Carolina and most other prohibition states exempt their in-state small wineries from having to go through the three-tiered system and allow them to sell and deliver wine directly to the public. Thus, the consumer must pay the additional mark-up on California wine, but not on North Carolina wine."

There is no way for an out-of-state distributor to get around this, and a North Carolina resident's only path to ordering wine that is not on "the approved list" winds through a tangled vineyard indeed. *Id.* at 8. The resident "simply" obtains a permit, and secures willing wholesalers and retailers, then the wine can pass through several middlemen and the resident can buy it from a retailer. *See id.* Or, the resident can advise a manufacturer or importer, for $102, to obtain a Non–Resident Wine Vendor Permit. *See id.* (citing N.C. Gen.Stat. §§ 18B–1114 and – 902(26)). But if the resident wants to order directly from a North Carolina winery, the path is clear and the weather sunny: no obstacles exist but the buyer's income and taste.

Plaintiffs correctly allege that the statutes have interfered with their ability to purchase wine from out-of-state wineries, auction houses, and retailers, and have it delivered to their North Carolina addresses. Plaintiffs therefore argue that this statutory scheme facially offends the Commerce Clause of the United States Constitution by "depriving Plaintiffs under color of law of their Constitutional right to engage in interstate commerce without undue interference by state law." (Pl.'s Mtn. Summ. J. at 2.) The *per se* unconstitutional effect of the statutes is, they argue, to protect local interests at the cost of discriminating against out-of-state sources, thereby instituting a legislatively enforced program of economic protectionism. They argue, citing *Brown–Forman Distillers Corporation v. New York State Liquor Authority*, 476 U.S. 573, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986), that because this uneven legislation has the effect of directly favoring in-state interests over out-of-state interests, it should be rejected without further inquiry into state legitimate interests. See Plaintiff's Memorandum in Support of Motion for Summary Judgment, at 14.

Plaintiffs also take the position that the statutes on their face serve no legitimate purpose because, in Plaintiffs' view, they do not promote temperance, do not address the issue of purchase of alcohol by minors, they do not further state tax and revenue laws, and they do not prevent people from circumventing state laws against purchasing alcohol on Sunday mornings. (Pl.'s Mem. Supp. Summ. J. at 15–16.) Plaintiffs urge that absent these justifications, the only rationale for the legislation is to give in-state wineries a competitive edge by restricting North Carolinians from directly purchasing out-of-state wines.

Defendants counter that requiring out-of-state wineries to submit to the three-tier system's requirements assists the ABC Commission and law enforcement in policing trade violations and determining the source of substandard or dangerous products. (*See* Def.'s Mem. Supp. Summ. J. at 17 (citing Bason Res. at 6).) To explain why they rigidly apply this system to out-of-state, but not in-state, wineries, they argue that the "state has control over licensed local wineries that it does not have over other dealers in other states." *Id.*; (Def. Mem. Opp. Pl.'s Mtn. Summ. J. at 9.) They argue that licensing out-of-state wineries in the manner of in-state wineries would involve significant administrative costs. *See id.*

### III. Standard Applicable to Motions for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure states that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party may not rest on his pleadings, but must demonstrate that specific material

facts give rise to a genuine issue. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When considering a motion for summary judgment, a district court views the record in the light most favorable to the nonmoving party. *See Clark v. Alexander,* 85 F.3d 146, 150 (4th Cir.1996).

## IV. Discussion

### A. Balancing the Demands of the Dormant Commerce Clause and the Twenty–First Amendment

*It is well settled that the Twenty-first Amendment did not entirely remove state regulation of alcohol from the reach of the Commerce Clause. Rather, the Twenty-first Amendment and the Commerce Clause "each must be considered in light of the other and in the context of the issues and interests at stake in any concrete case." Our task, then, is to reconcile the interests protected by the two constitutional provisions.*[7]

### 1. The Constitutional Difficulty Arises Not With North Carolina's Three–Tier System, But Rather With North Carolina's Failure to Apply the System to In–State and Out–of–State Wineries Uniformly

The Court resolves this matter by balancing two provisions of the Constitution: the Commerce Clause and the Twenty–First Amendment. These sections are not truly competing, but each must be deployed with care so that the other is not upset. The analysis in both sections turns on an articulation of the purpose and effect of the state legislation. Therefore, at the onset, the Court must examine the purpose of North Carolina's three-tier system, and the exemption allowing in-state wineries to bypass the three-tier system while denying the same benefit to out-of-state wineries.

The keystone issue is whether the three-tier system can be selectively applied to most wineries (including all out-of-state wineries) but suspended for in-state wineries. Plaintiffs argue that North Carolina facially discriminates against interstate commerce in violation of the Commerce Clause, claiming that North Carolina impermissibly regulates out-of-state transactions and that the ABC laws constitute economic protectionism for in-state businesses. Defendants respond that the ABC laws create a scheme of "even-handed regulation that indirectly affects interstate commerce." (Def.s' Resp. at 4.)[8]

With regard to the ABC system generally, Defendants are correct. Defendants'

---

**7.** *Brown–Forman Distillers Corp. v. New York State Liquor Auth.,* 476 U.S. 573, 584, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986) (citing *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984)) (quoting *Hostetter v. Idlewild Bon Voyage Liquor Corp.,* 377 U.S. 324, 332, 84 S.Ct. 1293, 12 L.Ed.2d 350).

**8.** This Court recognizes at the onset that Defendants, in their Memorandum in Support of their Motion for Summary Judgment, misconceive Plaintiff's argument by overlooking its crux: that in— and out-of-state wineries are treated unevenly because the legislation makes a provision for in-state wineries to *circumvent* the three-tier scheme. In the Court's view, the factual situation that vio-

lates the Commerce Clause is expressed well as follows:

> If the North Carolina alcoholic beverage statutes prohibited all wineries from shipping directly to consumers, it would be an *evenhanded regulation of the transportation of alcoholic beverages,* and the court would have to consider the legitimacy of the state's interest. In this case, however, North Carolina Statutes, including N.C.Gen.Stat. § 18B–102, 18B–102.1, 18B–109 and 18B–1114, do not regulate evenhandedly. (Pl.'s Mem. Supp. Mtn. Summ. J. at 15–16.)

The Court understands Plaintiffs' Commerce Clause complaint is not that out-of-state wine must pass through the three-tier system, but

Memorandum in Support of Motion for Summary Judgment, at 17, states simply that prohibiting direct shipments of out-of-state wines "furthers legitimate state interests." This explanation does not shed as much light as the Responses to Plaintiff's Interrogatories provided by George Bason, the Chairman of the North Carolina Alcoholic Beverage Control Commission, who Defendants cite when pressed for information regarding the specific purpose of the three-tier system. (*See, e.g., id.* (citing Bason Res. at 6).)

Bason suggests that the specific purposes of prohibiting out-of-state direct shipments could include enforcing the state's policy of preventing sales to minors (Bason Res. 5) and assuring safety and quality control by directing that wines eminate from a single source (Id. 6). Importantly, Bason notes that the three-tier system "enables the Commission and law enforcement to quickly and accurately determine who a responsible seller is when allegations are made concerning industry trade violations... and enables the Commission and law enforcement to obtain information quickly in order to determine the source of substandard, damaged, or unsafe product." *Id.* William M. Daniel, Director of the Corporate, Excise and Insurance Tax Division states another purpose: assuring collection of excise tax.[9] (*See* Daniel Aff. at 2). The Court agrees with Defendants that these are all serious and legitimate state purposes, and as required by the summary judgment standard, the Court assumes the veracity and accuracy of these purposes and their supporting facts. But clearly the legitimacy of the ABC system generally is not the same as this matter's core issue of the Constitutionality of a disparity inherent in applying an otherwise legitimate system fully to out-of-state interests, but only mostly to in-state interests. Concerns about quality control and safety, tax collection, and administration justify North Carolina's need for the ABC system generally, but not the specific exception's constitutionality.

## 2. The Requirements of the Dormant Commerce Clause

■ The Commerce Clause provides that "Congress shall have the power to regulate commerce ... among the several states." U.S. Const., Art. I, § 8, cl. 3. A corollary of the Commerce Clause, the dormant Commerce Clause is at play here: "the premise of dormant commerce clause jurisprudence is an inference that the grant of power to Congress in Art. I § 8

that out-of-state wine must always pass, whereas in-state wine receives preferential treatment in that it may qualify for an exception to circumvent some steps. Defendants' argument appears to assume that Defendants challenge the ABC system, when it clearly challenges only the exception.

9. For reasons discussed below, the Court is particularly concerned with Mr. Daniel's statement that "It is reasonable to assume that many regular purchasers of wine would buy from the cheapest source available," if out-of-state wineries could ship directly (and with lower prices because taxes might not be paid, resulting in lower costs to them). (Daniels Aff. at 2). "It is," he continues, "reasonable to assume than [sic] not just customers of fine and rare wines would purchase from out-of-state sources, but also those who regularly buy inexpensively or moderately priced table wines." (*Id.*) These words indicate that Daniels is concerned with protecting the competitive position of North Carolina wineries as against out-of-state wineries, which is analogous to the impermissible protectionism described in *Bacchus Imports v. Dias,* 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984). The Twenty-first Amendment authorizes states to control the importation of alcoholic beverages into their borders. But it does not permit states to discriminate, when they regulate, in such a way as to bestow upon their own businesses a formalized system of economic advantage.

cl. 3 implies a limitation on state authority over the same subject." *Bridenbaugh v. Freeman–Wilson,* 227 F.3d 848, 849 (7th Cir.2000). This counterbalances the Twenty-first Amendment's authorization of state control of its liquor importation. *See id.*

■ The Supreme Court adopts "a two-tiered approach" to analyzing state economic regulation under the Commerce Clause. *Brown–Forman,* 476 U.S. 573, 578–9, 106 S.Ct. 2080, 90 L.Ed.2d 552. Applying this approach, this Court must first determine whether North Carolina's statutory scheme directly or indirectly regulates interstate commerce. Direct regulation is typically addressed severely: "When a statute *directly* regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally *struck down the statute without further inquiry.*" *Id.* (emphasis added).

When a statute only *indirectly* affects interstate commerce, on the other hand, *"and regulates evenhandedly,"* the Supreme Court proceeds to an analysis of "whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits." *Id.* (emphasis added) (citing *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970)). Acknowledging that "there is no clear line" separating the two situations, the Supreme Court stated that regardless of whether discrimination is direct or indirect, "the critical consideration is on the overall effect of the statute on both local and interstate activity." *Id.*

■ In the Court's view, the North Carolina ABC laws present a relatively cut and dry example of *direct* discrimination against interstate commerce. The statutory scheme is unequivocally *not* "evenhand-ed." Rather, the North Carolina ABC law facially discriminates against out-of-state manufacturers by exempting North Carolina wineries from some of the three-tier system's burdens. As Plaintiffs properly note, the ABC laws "regulate and criminalize interstate commercial activity . . ., but not similar intrastate commercial activity." (Pl.s' Mem. Supp. Summ. J. at 4.) In-state wineries can ship wine directly to North Carolina consumers, and out-of-state wineries cannot do so. In allowing in-state wineries to circumvent a step of the three-tiered distribution chain for their products, while denying out-of-state wineries a similar benefit, North Carolina exercises direct facial discrimination. Similarly, North Carolina wine purchasers can procure wine directly through the mail from in-state wineries, but must complete extra paperwork and seek special approval (as must the out-of state-manufacturers) if they seek to purchase out-of-state wine directly from the manufacturer. Clearly, this has a chilling effect on North Carolinians' ability to purchase out-of-state wine and on out-of-state wineries' ability to sell within the state. The sum effect is that North Carolina places a greater burden on goods produced out-of-state than on goods produced in-state.

As the Court notes above, in a Commerce Clause violation for direct discrimination, the *Brown–Forman* approach requires that the statute be struck down without the further inquiry into legitimate interests that would be necessary if the discrimination were merely indirect. Therefore, unless this case implicated the Twenty-first Amendment, the Court would cease the analysis upon this finding and rule in Plaintiffs' favor. The sole remaining ground for upholding the statute is North Carolina's argument that the Twenty-first Amendment is substantial enough to permit state legislation that would be

invalid under the dormant Commerce Clause absent the Twenty-first Amendment's shelter.

### 3. The Attributes of the Twenty–First Amendment

Defendants urge that, even if the statutes are discriminatory, and thus violative of the Commerce Clause, the contested provisions of North Carolina's ABC laws are authorized by Section 2 of the Twenty-first Amendment to the Constitution and by federal statutes. Section 2 provides that "[t]he transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." Defendants argue that this provision extends *carte blanche* to apply differing standards to the importation of out-of-state liquor. The Court cannot accept Defendants' interpretation.

■ The United States Supreme Court has made clear that the Twenty-first Amendment does not trump other sections of the United States Constitution. *See e.g. 44 Liquormart v. Rhode Island*, 517 U.S. 484, 516, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996). The favored approach in matters such as the instant case is to *balance* the Commerce Clause and the Twenty-first Amendment, a method developed in a similar factual context by the Supreme Court in *Bacchus Imports v. Dias*, 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984). The Fourth Circuit nicely expressed this balance earlier this year in *TFWS, Inc. v. Schaefer*, 242 F.3d 198 (4th Cir.2001), which controls every important aspect of this Court's decision, since it is fully analogous on the issue of tension between the Commerce Clause and the Twenty-first Amendment.

■ In *TFWS*, the Judge Michael wrote that "when a state's Twenty-first Amendment interests conflict with federal power exercised under the Commerce Clause, courts must conduct a balancing test in a 'pragmatic effort to harmonize state and federal powers.'" 242 F.3d at 212 (quoting *324 Liquor Corp. v. Duffy*, 479 U.S. 335, 346–47, 107 S.Ct. 720, 93 L.Ed.2d 667 (1987)) (quoting *Ca. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 109, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980)). The correct inquiry asks "'whether the interests implicated by a state regulation are so closely related to the powers preserved by the Twenty-first Amendment that the regulation may prevail, notwithstanding that its requirements directly conflict with express federal policies.'" *Id.* (quoting 479 U.S. at 347, 107 S.Ct. 720 (quoting *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 714, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984))). These interests preserved by the Twenty-first Amendment do not encompass "'unsubstantiated state concerns'": North Carolina must "demonstrate that its liquor regulatory policies *directly serve* the interests it proffers under the Twenty-first Amendment." *Id.* (quoting 445 U.S. at 114, 100 S.Ct. 937).

As noted above, North Carolina has articulated numerous legitimate reasons for ABC laws generally, but has not provided a reason for applying the ABC laws unevenly. Efficient administration of tax collection, safety, and the like would certainly balance in favor of retaining the existing general system, were it not for the exception for in-state wineries. But the Defendants do not provide the court with a reason for the *exception* to balance against the needs of the Commerce Clause. In the absence of a reasonable explanation from Defendants for the lack of uniformity, the only one that comes to mind is protection of local economic interests, which the Commerce Clause will not tolerate. No equilibrium can be achieved when

economic protectionism is placed on one side of the scale, and the Commerce Clause's need to preserve the respect of the several states for each other is placed on the opposite side. The Court stresses that it understands that Defendants do not admit that the purpose of the exception is economic protectionism. But since Defendants devote the filings to justifying the general system and not the exception, economic protectionism is the most likely explanation for the system that comes to mind.

In *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 265, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984), which this case is similar to, Hawaii imposed a twenty-percent excise tax on wholesale liquor sales. *See id.* at 265, 104 S.Ct. 3049. The Hawaiian legislature exempted from this tax certain locally produced beverages, such as okolehao [10] and pineapple wine. Plaintiff Bacchus Imports brought a Commerce Clause challenge to the disparate tax effects on local and foreign producers. The *Bacchus* case is aptly analogized to the one at bar.

The *Bacchus* court, as does this Court, divided the analysis into two sections. First, the Supreme Court noted that at issue was not the alcohol tax generally, but the permissibility of the "exemptions from the tax for certain locally produced alcoholic beverages." *Id.* It then expressed "[a] cardinal rule of Commerce Clause jurisprudence," that "[n]o State, consistent with the Commerce Clause, may impose a tax which discriminates against interstate commerce... by providing a direct commercial advantage to local business." *Id.* at 268, 104 S.Ct. 3049 (internal quotation marks omitted). Such a practice constitutes "economic protectionism," a finding

of which can be made "on the basis of either discriminatory purpose... or discriminatory effect." *Id.* at 270, 104 S.Ct. 3049 (internal quotation marks omitted).

In *Bacchus,* the Supreme Court found that the legislation's stated purpose of fostering local industry constituted a discriminatory purpose. *See id.* In the instant case, however, this Court relies on the North Carolina legislation's discriminatory effect. The *Bacchus* Court noted that "as long as there is some competition between the locally produced exempt products and non-exempt products from outside the State, there is a discriminatory effect." *Id.* at 271, 104 S.Ct. 3049. The Court finds that there is competition between North Carolina wines and wines from other states, and that since the legislation gives North Carolinian wineries a means to sell their product more easily, there is discriminatory effect in the legislation. The Court consequently finds that the statute here, like the Hawaiian tax, represents economic protectionism that violates the Commerce Clause.

■ As in the instant case, the *Bacchus* defendants countered by noting that "even if the tax exemption violates ordinary Commerce Clause principles, it is saved by the Twenty-first Amendment." *Id.* at 273, 104 S.Ct. 3049. However, the Supreme Court found that "[i]t is by now clear that the Amendment did not entirely remove state regulation of alcoholic beverages from the ambit of the Commerce Clause." *Id.* at 275, 104 S.Ct. 3049. Consistent with recent Supreme Court jurisprudence, Justice White stressed the importance of balancing the provisions: " '[b]oth the Twenty-first Amendment and the Commerce Clause are parts of the same Constitution

---

**10.** [oh–koh–leh–HAH–oh] An 80 proof Hawaiian liquor made from a mash of the ti plant (a Hawaiian indigenous shrub). Often substituted for rum and, like rum, comes in white (colorless) and golden versions. *See* Sharon Tyler Herbst, *The New Food Lover's Companion,* (Third Edition, Barron) (internet citation, page number and year unavailable).

[and] each must be considered in light of the other and in the context of the issues at stake in any concrete case.'" *Id.* (quoting *Hostetter v. Idlewild Bon Voyage Liquor Corp.,* 377 U.S. 324, 331–332, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964)). Thus, "[t]he question in this case is... whether the principles underlying the Twenty-first Amendment are sufficiently implicated by the exemption for okolehao and pineapple wine to outweigh the Commerce Clause principles that would otherwise be offended." *Id.* The state interests to be shielded from the Commerce Clause by the Twenty-first Amendment need to be "closely related to the powers reserved to it by the Twenty-first Amendment." *Id.* The liquor-regulating powers reserved for the states in 1933 are specifically *"not* to empower States to favor local liquor industries by enacting barriers to competition." *Id.* at 276, 104 S.Ct. 3049 (emphasis supplied). The high Court goes on to observe that:

> State laws that constitute mere economic protectionism are therefore not entitled to the same deference as laws enacted to combat the perceived evils of an unrestricted traffic in liquor. Here, the State does not seek to justify its tax on the ground that it was designed to promote temperance or to carry out any other purpose of the Twenty-first Amendment, but instead acknowledges that the purpose was to promote a local industry. *Id.* (internal quotation marks omitted).

In the instant case, of course, the Defendants do not concede that the purpose of the in-state exception is to promote local industry. They provide, in fact, no purpose for the exception. Certainly, they stress that the purpose of the *general ABC system* is to moderate the flow of liquor

into North Carolina, but this does not justify *the exception.* The exception has a discriminatory effect that assists North Carolina wineries in an area of clear competition with out of state wineries, and the most obvious *effect* is of economic protectionism. This, says the *Bacchus* court, is not the purpose of the Twenty-first Amendment. North Carolina can use the Amendment to protect the overall system, because the system promotes purposes of the Twenty-first Amendment. But it cannot use the Amendment to protect the exception from the Commerce Clause, because the exception does not fulfill a purpose of the Amendment. Economic protectionism is not the purpose of this safe harbor from the Commerce Clause.

## B. Implications of the Recent Seventh Circuit *Bridenbaugh* Decision

In addition to relying on the Twenty-first Amendment, Defendants argue that the Court should follow the lead of the Seventh Circuit in *Bridenbaugh v. Freeman–Wilson,* 227 F.3d 848 (7th Cir.2000), and uphold the statutes at issue. Instead, this Court will follow the analytical lead of the Seventh Circuit in that Opinion, and declare unconstitutional the statutes at issue. This case is factually distinguishable from *Bridenbaugh.* In fact, *Bridenbaugh* indicates that North Carolina's is the type of scheme the Seventh Circuit might reject as discriminatory. In *Bridenbaugh,* the Seventh Circuit reversed a district court's finding that an Indiana statute violated the Commerce Clause. Like the North Carolina provisions at issue in the instant matter, the applicable Indiana statute, I.C. § 7.1–5–11–1.5, made it unlawful for persons in another state or country to ship an alcoholic beverage directly to an Indiana residence.[11] *Unlike* the applicable North

---

**11.** In its entirety, the statute read:

(a) It is unlawful for a person in the business of selling alcoholic beverages in anoth-

Carolina statute, however, the Indiana statute applied *equally* to liquor originating *within* Indiana, and thereby did not clearly favor in-state liquor manufacturers:

> Indiana insists that *every* drop of liquor pass through its three-tiered system and be subjected to taxation. Wine originating in California, France, Australia, *or Indiana* passes through the same three tiers and is subject to the same taxes. *Id.* at 853 (italics in original, underlining supplied).

*Bridenbaugh* turns on the legislation's "every drop" consistency and even-handedness. Indiana's statute was therefore Constitutionally viable because it did not discriminate by favoring out-of-state liquor over in-state liquor—it subjected Indiana distributors and Illinois distributors alike to the scheme, "unless the state has used its power to impose a discriminatory condition on importation, one that favors Indiana sources of alcoholic beverages over sources in other states, as Hawaii did in *Bacchus.*" *Id.* at 853.[12] The Seventh Circuit clearly distinguishes the situation in which legislation is applied unilaterally from one in which unconstitutional niches for in-state businesses are carved into an otherwise permissible general scheme. The instant case is analogous to *Bacchus*, not *Bridenbaugh.*

For, unlike the Seventh Circuit, this Court is faced with a statutory scheme that *clearly* favors North Carolina sources of alcoholic beverages over sources in other states. Defendants concede as much. *See* Defendants' Memorandum at 9 ("In essence, North Carolina's ABC laws prohibit only the direct catalogue and Internet sales of alcoholic beverages *from out-of-state sources* to individual residents within the state.") (emphasis added); *see also id.* at 10 ("*Except for wine ordered from a local North Carolina winery,* every container of wine or beer, lawfully sold in this state, has been channeled through the three-tiered distribution system to a state-licensed retailer.") (emphasis added). Indeed, the *Bridenbaugh* language quoted in the preceding paragraph suggests that the Seventh Circuit would have serious concerns with a discriminatory statutory scheme, such as North Carolina's. Thus, it appears that *Bridenbaugh,* to the extent it has any application to the present controversy, favors the Plaintiffs.

### V. Relief

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED and Defendant's Motion for Summary Judgment is DENIED. IT ADJUDGED that N.C. Gen.Stat. §§ 18B–102.1, 18B–109 and 18B–1114 violate the Commerce Clause. IT IS FURTHER

---

er state or country to ship or cause to be shipped an alcoholic beverage directly to an Indiana resident who does not hold a valid wholesaler permit under this title. This includes the ordering and selling of alcoholic beverages over a computer network (as defined by IC 35–43–2–3(a)).
(b) Upon a determination by the commission that a person has violated subsection (a), a wholesaler may not accept a shipment of alcoholic beverages from the person for a period of up to one (1) year as determined by the commission.
(c) The commission shall adopt rules under IC 4–22–2 to implement this section.

I.C. § 7.1–5–11–1.5.

**12.** Defendants cite *Bridenbaugh* in an attempt to describe "the legal issue before the court as one 'pit[ting] the twenty-first amendment, which appears in the Constitution, against the "dormant commerce clause" which does not.' " (Def.s' Mem. Supp. Summ. J. at 12 (citing *Bridenbaugh,* 227 F.3d at 849).) The Court disagrees. Instead, the Court believes this case pits the Supreme Court, whose opinions govern this Court, against the Seventh Circuit, whose opinions do not.

ADJUDGED that N.C. Gen.Stat. § 18B–102 violates the Commerce Clause to the extent that it prohibits out-of-state wine dealers from shipping their products directly to North Carolina residents, while not similarly limiting in-state wineries. IT IS FURTHER ADJUDGED that N.C. Gen.Stat. § 105–113.83 violates the Commerce Clause by not permitting out-of-state dealers and in-state wine buyers to pay the excise tax due on wine sales. IT IS FURTHER ADJUDGED that the Commerce Clause is violated when Defendants apply other portions of North Carolina's ABC laws pertaining to permits, residency requirements, and approved lists of wine in a manner that prohibits out-of-state dealers from shipping wine directly to North Carolina adult residents. It is the task of the North Carolina legislature, and not this Court, to design a non-discriminatory regulatory structure for the sale of alcoholic beverages in the state.

IT IS THEREFORE ORDERED that Defendants are ENJOINED from enforcing state laws, including those in the preceding paragraph, that prohibit or punish out-of-state wine dealers from directly shipping wines to adult North Carolina residents. IT IS FURTHER ORDERED that North Carolina authorities must accept excise tax payments from adult residents of North Carolina that are due on wine directly received from out-of-state sources. IT IS FURTHER ORDERED that Defendants will pay reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.