Juanita SWEDENBURG, in her own capacity and as Proprietor of Swedenburg Winery, a Virginia Partnership; David Lucas, in his own capacity and as Proprietor of the Lucas Winery, a California sole Proprietorship; Patrick Fitzgerald; Cortes DeRussy; and Robin Brooks Plaintiff,

v.

Edward F. KELLY, Chairman, and Lawrence J. Gedda and Joseph Zarriello, Commissioners, of the State Liquor Authority, Division of Alcoholic Beverage Control, State of New York, in their official capacities, Defendants,

and

Charmer Industries, Inc., Peerless Importers Inc., Eber Brothers Wine & Liquor Corp., Premier Beverage Company LLC, Metropolitan Package Store Association, Inc., Local 2d of the Allied Food and Commercial Workers International Union, and Dr. Calvin Butts Intervenor–Defendants.

No. 00 Civ. 0778(RMB).

United States District Court, S.D. New York.

Nov. 12, 2002.

Clint Botnick, Deborah Simpson, Institute for Justice, Washington, DC, Lance Goltko, Friedman Kaplan & Seiler, New York City, for plaintiff.

Bruce Brown, Office of Atty. Gen., Randy Masto, Gibson Dunn & Catcher, New York City, Howard Graft, Deborah Skakel, Baer Marks & Upham LLP, New York City, for defendants.

## DECISION AND ORDER

BERMAN, District Judge.

## I. Introduction

This case is one of a series of recent constitutional challenges to state alcoholic beverage control laws, particularly as they relate to the direct shipment of wine. What the cases all have in common is the relationship (and tension) between the Commerce Clause of the United States Constitution, which empowers Congress to regulate commerce among the several states, and the Twenty-first Amendment to the Constitution, which grants to the states the power to regulate the importation and distribution of alcoholic beverages within their borders. **The Court concludes that the New York ban on the direct shipment of out-of-state wine is unconstitutional.**

On February 3, 2000, Plaintiffs Juanita Swedenburg ("Swedenburg") and David Lucas ("Lucas"), proprietors of two out-of-state wineries, and Patrick Fitzgerald

("Fitzgerald"), Cortes DeRussy ("DeRussy"), and Robin Brooks ("Brooks"), three New York State consumers of wine (collectively "Plaintiffs") filed an action against Defendants Edward F. Kelly ("Kelly"), Chairman of the New York State Liquor Authority, and Lawrence J. Gedda ("Gedda") and Joseph Zarriello ("Zarriello"), Commissioners of the New York State Liquor Authority, requesting that the Court "[d]eclare ... N.Y. Alco. and Bev. Cont. Law §§ 102($l$)(a), (c), and (d) ['ABC Law'] ... unconstitutional, void, and of no effect[.]"[1] Compl. at 10. Plaintiffs claim that "the Direct Shipment and Advertising Ban violates the rights of all the plaintiffs to freedom of commerce as guaranteed by the interstate commerce clause," id. ¶ 38, "the economic liberty of the plaintiffs Swedenburg and Lucas under the privileges and immunities guarantee," id. ¶ 46, and, "the right of the winery plaintiffs to produce, and of the consumer plaintiffs to receive, protected speech in violation of the First Amendment." Id. ¶ 54.

Defendants Kelly, Gedda, and Zarriello, as well as Intervenors Charmer Industries, Inc., Peerless Importers Inc., Eber Brothers Wine & Liquor Corp., Premier Beverage Company LLC, Metropolitan Package Store Association, Inc., Local 2d of The Allied Food and Commercial Workers International Union, and Dr. Calvin O. Butts (collectively "Defendants") filed a (joint) motion to dismiss the complaint on or about May 11, 2000, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6). Plaintiffs, including amici Coalition to Preserve Consumer Access to Wine, Arcadian Estate Vineyards and Cascata Winery at the Professor's Inn, and Consumer Alert, opposed Defendants' motion.[2] Oral argument was held on July 21, 2000. By Decision and Order dated September 5, 2000 ("September 5, 2000 Decision"), the Court denied Defendants' motion to dismiss. **"No evidence has been presented here regarding the purpose(s) and effect(s) of New York's ABC Laws and it would be precipitous to make a determination foreclosing Plaintiffs' cause upon the existing record. At this stage, the Court is constrained to assume that a 'principal purpose of the Direct Shipment and Advertising Ban is economic protectionism[.]' "** *Swedenburg v. Kelly,* 00 Civ. 778(RMB), 2000 WL 1264285, at *10 (S.D.N.Y. Sept. 5, 2000) (citing Compl. ¶ 36) (emphasis in original).

Discovery ensued, and on June 7, 2001, Plaintiffs moved for summary judgment pursuant to Fed.R.Civ.P. 56(c).[3] "The law

---

1. ABC Law § 102(1)(a) states that, "No person shall send or cause to be sent into the state any letter, postcard, circular, newspaper, pamphlet, order kit, order form, invitation to order, price list, or publication of any kind containing an advertisement or a solicitation of any order for any alcoholic beverages ... unless such person shall be duly licensed hereunder to traffic in alcoholic beverages." Section 102(1)(c) provides that, "No alcoholic beverages shall be shipped into the state unless the same shall be consigned to a person duly licensed hereunder to traffic in alcoholic beverages ..." Section 102(1)(d) provides that, "No common carrier or other person shall bring or carry into the state any alcoholic beverages, unless the same shall be consigned to a person duly licensed hereunder to traffic in alcoholic beverages...." Section 130(3) makes violation of the N.Y. ABC Law a misdemeanor.

2. On June 5, 2000, the Court also granted a letter application by the Coalition for Free Trade to participate as amicus.

3. The evidence submitted by Plaintiffs generally has focused on the economic impact of the direct shipping ban, the ability of small out-of-state wineries to access the New York market, the economics of the current wine market and the legislative history of the New York ABC Laws. Defendants' evidence has tended to focus upon the utility of the three-tier system and its impact upon temperance and teen drinking.

is discriminatory on its face and burdens interstate commerce by making it all but impossible for many small wineries to sell their products to New York consumers." Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment ("Pl. Mem.") at 2.[4] Defendants cross-moved for summary judgment on August 17, 2001, asserting that "state regulations ... that prohibit shipments from out-of-state wineries to anyone other than in-state licensed wholesalers 'fall within the core of the State's power under [Section 2 of] the Twenty-first Amendment' and are 'unquestionably legitimate'."[5] Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Def.Mem.") at 2–3. Plaintiffs and Defendants filed reply briefs dated October 13, 2001 and November 13, 2001, respectively. See Pl. Reply; Def. Reply. Oral argument—which was enormously helpful to the Court—was held on April 17, 2002. Supplemental briefs were, thereafter, filed at the Court's request on April 19, 2002.[6]

## II. Background[7]

Like other states, New York has a "three-tier" system of alcohol sales. Alcohol producers must go through licensed wholesalers and distributors who must, in turn, go through licensed retailers who then sell to consumers. See Vijay Shanker, Note, *Alcohol Direct Shipment Laws, the Commerce Clause, and the Twenty-First Amendment,* 85 Va. L.Rev. 353, 355 (1999). All alcoholic beverages (not just wine) must be distributed through this three-tiered system. The ABC Law does not allow out-of-state wineries to ship their products directly to New York consumers. See N.Y. ABC Law § 102(1)(c).[8]

Plaintiffs, who are here concerned only about the distribution of wine, contend, *inter alia,* that the direct shipment ban

---

4. "[T]he federal Constitution empowers Congress '[t]o regulate Commerce ... among the several states.' U.S. Const. Art. 1, § 8, cl. 3. The courts have interpreted the language of this provision affirmatively granting authority to Congress to regulate commerce as having a 'negative' aspect, designated the 'dormant' commerce clause, that implicitly establishes a national free market and restricts state and local governments from impeding the free flow of goods from one state to another." *Dickerson v. Bailey,* 87 F.Supp.2d 691, 693 n. 2 (S.D.Tex.2000) (citing *Wyoming v. Oklahoma,* 502 U.S. 437, 469–70, 112 S.Ct. 789, 117 L.Ed.2d 1 (1992)); *see also Loretto Winery Ltd. v. Gazzara,* 601 F.Supp. 850, 856 (S.D.N.Y.1985), aff'd sub nom., *Loretto v. Duffy,* 761 F.2d 140 (1985) ("[t]he traditional principles underlying the [commerce] clause operate not only as a grant to Congress of power to regulate interstate commerce, but also as a restriction on the authority of the states to regulate interstate trade.")

5. Section 2 of the Twenty-first Amendment of the U.S. Constitution states that: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. Const. amend. XXI, § 2.

6. By letter dated November 4, 2002, Defendants' counsel advised the Court that on November 2, 2002, President Bush signed into law the "Direct Shipping Statute" which allows customers of an out-of-state winery, under certain circumstances, to ship wine directly to the customers' home state. As noted by Plaintiff's counsel in his letter dated November 8, 2002, this new law does not affect the outcome of this case except, perhaps, to bolster the conclusion that direct shipment of wine is a viable alternative to its ban.

7. A somewhat more detailed recitation of the facts, incorporated herein by reference, is presented in the Court's September 5, 2000 Decision. See *Swedenburg v. Kelly,* 00 Civ. 778, 2000 WL 1264285 (S.D.N.Y. Sept.5, 2000).

8. Plaintiffs note that "[p]rior to 1970, New York maintained a three-tier system for alcohol distribution, but the system permitted some direct shipments of wine," i.e. for personal use. Pl. Mem. at 16.

violates both the Commerce Clause and the Privileges and Immunities Clause of the United States Constitution.[9] "New York's ABC Law on its face regulates interstate commerce and creates discriminatory burdens." Pl. Mem. at 12. Plaintiffs argue that Defendants' explanations of New York's direct shipping ban do not "justify the economic protectionism of [the law]." Pl. Reply at 7. Plaintiffs also contend that New York law "forbids certain advertising of lawful products and thereby deprives all plaintiffs of the free flow of communications guaranteed by the First Amendment." *Id.* at 3.

Defendants, as noted, rely principally upon the explicit language of the Twenty-first Amendment and assert "the State has acted within its 'core powers' ... to regulate the 'transportation or importation' of alcoholic beverages for 'delivery or use' within the State." Def. Mem. at 6. They contend that "where, as here, a state regulation concerns 'whether to permit importation or sale of liquor and how to structure the liquor distribution system,' which is the 'central power reserved by § 2 of the Twenty-first Amendment,' that ends the inquiry." *Id.* at 7 (quoting *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 715, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984)).[10] Defendants further contend that the New York Alcoholic Beverage Control "regime" advances and is premised upon legitimate state interests protected by the Twenty-first Amendment, including promoting temperance, ensuring orderly market conditions, and raising revenue. *Id.*[11] With respect to communications, Defendants assert that the ABC Laws includes a "narrowly tailored restriction on commercial advertising for alcoholic beverages ... plainly aimed at preventing the *unlawful* solicitation of orders for direct shipments of alcohol to New York residents by unlicensed suppliers." Def. Mem. at 29 (emphasis in original). In his November 4th letter, Defendants' counsel argues (incorrectly in the Court's view) that: "Congress has spoken on the direct shipment of wine, has struck the balance it deems appropriate, and has therefore removed the issue of state direct shipping bans from application of the 'dormant' Commerce Clause."

### III. Standard of Review

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show ... that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1223 (2d Cir.1994).

The moving party bears the initial burden of "informing the district court of the

9. The Privileges and Immunities Clause of Article IV, § 2 provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2.

10. Defendants also contend that "there can be no violation of the 'dormant' Commerce Clause here because Congress recently passed the Twenty-first Amendment Enforcement Act ('Act') [106 Pub.L. 386] to support state bans on direct shipping." Def. Mem. at 12. The Court finds this argument unpersuasive because the Act merely authorizes a state attorney general to enforce state law "regulating the importation or transportation of any intoxicating liquor" in federal court, 27 U.S.C. § 122a(b), and explicitly provides that it "shall not be construed to grant to States any additional power." 27 U.S.C. § 122a(e)(2).

11. In fact, Defendants argue that New York's ABC Law does not violate the "dormant" Commerce Clause and that there is no need for the Court to assess whether the law is "saved" by the Twenty-first Amendment. Def. Mem. at 13–22.

basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The burden then shifts to the non-moving party which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed. R.Civ.P. 56(e)); *accord Brass v. American Film Technologies, Inc.*, 987 F.2d 142 (2d Cir.1993). The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Gallo*, 22 F.3d at 1223.

When cross-motions for summary judgment are made the standard is the same as that for individual motions for summary judgment. *See Morales v. Quintel Entertainment, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). Each motion must be considered independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party. *See id.*[12]

## IV. Recent (Related) Litigation

At the time of the Court's September 5, 2000 Decision, three other district courts had considered constitutional challenges to state alcoholic beverage regulations as they relate to the direct shipment of wine and ruled, *inter alia*, that the challenged statutes were in violation of the dormant Commerce Clause. *See Swedenburg*, 2000 WL 1264285, at *3–4 (discussing *Bridenbaugh v. O'Bannon*, 78 F.Supp.2d 828 (N.D.Ind.1999) (Indiana statute prohibiting direct shipment of wine from out-of-state to an Indiana residence held unconstitutional on motion for summary judgment); *Dickerson v. Bailey*, 87 F.Supp.2d 691 (S.D.Tex.2000) (finding upon summary judgment that ban on direct shipment from out-of-state wineries violates the dormant commerce clause); and *Kendall–Jackson Winery, Ltd. v. Branson*, 82 F.Supp.2d 844 (N.D.Ill.2000) (preliminary injunction granted where plaintiffs showed likelihood of success on the merits that the Illinois winery "exemption" violates dormant commerce clause)).[13]

Eight days after the Court issued its September 5, 2002 Decision, the United States Court of Appeals for the Seventh Circuit reversed the Indiana district court's decision in *Bridenbaugh* and found the direct shipping ban to be constitution-

---

**12.** Following oral argument, the Court asked the parties to submit additional letters addressing the question of whether an evidentiary hearing was required to resolve the instant motions. On May 16, 2002, Plaintiffs wrote that, "[a]ll evidence is before the Court," and that "[a]ny evidentiary hearing would be redundant of the extensive evidence presently before the Court." By letter dated May 21, 2002, Defendants argued that "this Court need not hold any evidentiary hearing to decide this case in defendants' favor" but that a hearing would be required on the issue of

"whether the State's state temperance objective is pretextual[.]"

**13.** The exemption at issue in *Kendall–Jackson* provided that Illinois wineries were not bound by the state's "Fair Dealing Act" which regulated "agreements between distributors and suppliers of liquor." 82 F.Supp.2d at 850. As discussed *infra*, a number of states, including New York, exempt in-state wineries from certain basic requirements of the three-tier system.

al. *See Bridenbaugh v. Freeman–Wilson,* 227 F.3d 848, 854 (7th Cir.2000) (Easterbrook, J.) [14] In *Bridenbaugh,* plaintiffs had challenged Title 7.1 of the Indiana Code which establishes that state's "three tier" alcohol distribution system. 227 F.3d at 851. Among other things, the Indiana Code "permits local wineries, but not wineries 'in the business of selling ... in another state or country', to ship directly to Indiana consumers." *Id.* The Seventh Circuit noted that Section 2 of the Twenty-first Amendment "empowers Indiana to control alcohol in ways that it cannot control cheese," *id.,* and also found that Section 2 "enables a state to do to the importation of liquor ... what it chooses to do to the internal sales of liquor, but nothing more." *Id.* at 853. "Indiana insists that *every* drop of liquor passes through its three-tiered system and be subject to taxation. Wine originating in California, France, Australia, or Indiana passes through the same three tiers and is subjected to the same taxes. Where's the functional discrimination?" *Id.*[15]

Following the Seventh Circuit's decision in *Bridenbaugh,* United States District Court Judge Melinda Harmon of the Southern District of Texas granted a motion for reconsideration in *Dickerson,* 87 F.Supp.2d 691, to allow the parties to address the impact of *Bridenbaugh. Dickerson v. Bailey,* 212 F.Supp.2d 673, 675 (S.D.Tex.2002). Upon reconsideration, Judge Harmon adhered to her prior determination that the Texas Alcoholic Beverage Code was unconstitutional, finding that it imposed "differing burdens on in- and

out-of-state [wine] producers so as to favor in-state wineries." *Id.* at 694. The Texas three-tier system includes certain legislative exceptions or exemptions that allow in-state, but not out-of-state, wineries to ship directly to Texas consumers. *Id.* at 677. "Because out-of-state producers must go through Texas-licensed wholesalers and retailers to sell wine in Texas, they suffer higher costs which translate into higher prices, which in turn affect their ability to compete with local Texas wineries." *Id.* at 694–95. The Texas ABC law was not "saved" by the Twenty-first Amendment because the state failed "to demonstrate how a statutory exception for local wineries from Texas' three-tier regulatory system ... is justified by any of the traditional core concerns of the twenty-first amendment." *Id.* The court enjoined Texas from enforcing its ban on direct importation (shipment) of wine. *Id.* at 696.

A number of other courts have addressed Commerce Clause challenges to bans on the direct shipping of wine. In *Bainbridge v. Bush,* the District Court for the Middle District of Florida upheld Florida's ban on direct shipment of wine. 148 F.Supp.2d 1306, 1309 (M.D.Fla.2001). The court found that the Florida three-tiered system "directly discriminates against out-of-state wineries in violation of the ... dormant commerce clause ... by expressly prohibiting out-of-state wineries from shipping their wine directly to non-licensed Florida residents." *Id.* at 1311 (emphasis omitted). "In contrast, in-state wineries have the option of becoming licensed as

---

**14.** Judge Easterbrook wrote the *Bridenbaugh* opinion for a two judge panel. *See* 227 F.3d at 848–49 n. * (citing 28 U.S.C. § 46(d)). A third panel member recused himself and did not participate in the consideration or decision of the case. *Id.*

**15.** The court in *Bridenbaugh* rejected the plaintiff's contention that a provision of the

Indiana code that allowed (only) holders of wine wholesaler or retailer permits to ship wine directly to Indiana consumers' homes was discriminatory, presumably because permit holders could "deliver California and Indiana wines alike; firms that do not hold permits may not deliver wine from either (or any) source." 227 F.3d at 853.

vendors, thereby avoiding the increased costs of the three-tiered system." *Id.* Florida's statute was nevertheless "saved" because it was a valid exercise of the state's powers under the Twenty-first Amendment. Despite "protectionist overtones", the Florida statute was said to advance the core concerns of temperance and revenue collection. *Id.* at 1313. "[I]nvalidation of the scheme would hinder [Florida's] ability to tax alcoholic beverages sold within the state." *Id.*

On November 8, 2002, the United States Court of Appeals for the Eleventh Circuit vacated the decision in *Bainbridge* and remanded the case to the district court. *Bainbridge v. Turner,* 311 F.3d 1104 (11th Cir.2002). The court of appeals agreed with the district court's determination that the Florida direct shipping ban was facially discriminatory, but found that a question of fact remained as to whether the "regulatory scheme is so closely related to the core concern of raising revenue as to escape Commerce Clause scrutiny." *Id.* at 1115 ("Before the State can successfully raise the Twenty-first Amendment as a shield, it must show that its statutory scheme is necessary to effectuate the proffered core concern in a way that justifies treating out-of-state firms differently from in-state firms—a fact question.") [16]

In *Heald v. Engler,* 00 Civ. 71438, Slip. Op. (E.D.Mich. Sept. 28, 2001), the district court found that "direct shipment laws are a permissible exercise of state power under § 2 of the 21st Amendment." Slip Op. at 8. Michigan's three-tiered distribution system contained an "exemption" that allowed in-state wineries, but not out-of-state wineries, to ship directly to consumers. Slip Op. at 3. The court determined

that because the Twenty-first Amendment gave states "virtually complete control" over alcohol regulation, a state's action pursuant to the Twenty-first Amendment would only violate the Commerce Clause if it constituted "mere economic protectionism." Slip Op. at 9. Michigan's law was not mere economic protectionism because it was designed to "ensure the collection of taxes" and "reduce the risk of alcohol falling into the hands of minors." Slip Op. at 10.

Two (other) district courts have found direct shipment laws to be unconstitutional. In *Bolick v. Roberts,* 199 F.Supp.2d 397 (E.D.Va.2002), the District Court for the Eastern District of Virginia adopted a Magistrate Judge's report and recommendation that the Virginia direct shipping ban was unconstitutional. 199 F.Supp.2d at 416. Virginia's three-tiered system "is a misnomer when applied to in-state producer/licensees. It is accurate to state that in-state producer licensees do not have to pass their products through each tier that an out-of-state entity must." *Id.* at 409. **"This is the very definition of a facially discriminatory law."** *Id.* at 407 (emphasis added). The court found that Virginia had not established "that there are no other nondiscriminatory means of enforcing [its] legitimate interests," *id.* at 409, and held that the Twenty-first Amendment did not shield (or save) the direct shipping ban. *Id.* at 411. With respect to remedies, the district court disagreed with the magistrate's recommendation that the exceptions to Virginia's three-tiered system, which (unlawfully) favored in-state wineries, could be severed from the rest of the statute. *Id.* at 415–16; *compare id.* at 450 (Report and Recom-

16. In reaching its decision, the Eleventh Circuit found that "interests besides temperance, such as ensuring orderly market conditions and raising revenue are 'unquestionably legit-

imate' under the Twenty-first Amendment." *Bainbridge,* 311 F.3d at 1115 (quoting *North Dakota v. United States,* 495 U.S. 423, 432, 110 S.Ct. 1986, 109 L.Ed.2d 420 (1990)).

mendation) ("It is therefore clear that the unconstitutional provisions can be segregated from the Act as a whole and while the Plaintiffs object to the constitutionality of the entire Act's closed system ... case law ... does not require the Court to recommend that the entire statutory scheme be declared unconstitutional.") The district court determined that the importation bans were unconstitutional and enjoined their enforcement. *Id.* at 416 ("Declaring unconstitutional and enjoining the enforcement of each of the challenged statutes effects the intent of the legislature, serves the interests of the consumer and dormant Commerce Clause, and preserves the police powers of the Commonwealth to further its legitimate interests under the ABC regime.").

In *Beskind v. Easley,* 197 F.Supp.2d 464 (W.D.N.C.2002), plaintiffs challenged North Carolina's ABC laws, which required most, but not all, of the alcohol sold in North Carolina to pass through a three-tiered system. Plaintiffs objected to an exception in the law which allowed "North Carolina wineries that are licensed to do business in the state [to] bypass the wholesaler and retailer and ship wine directly to North Carolina consumers." *Beskind,* 197 F.Supp.2d at 467. The court found that the "ABC laws present a relatively cut and dry example of direct discrimination against interstate commerce," and rejected the contention that the Twenty-first Amendment "saved" the regulations. *Id.* at 471 (emphasis omitted). "North Car-

olina can use the [Twenty-first] Amendment to protect the overall [three-tiered] system, because the system promotes purposes of the Twenty-first Amendment. But it cannot use the Amendment to protect the exception from the Commerce Clause, because the exception does not fulfill a purpose of the Amendment." *Id.* at 474. The court enjoined North Carolina from enforcing the provisions of the law "that prohibit or punish out-of-state wine dealers from directly shipping wines to adult North Carolina residents." *Id.* at 476.

## V. Analysis

"No alcoholic beverages shall be shipped into the state unless the same shall be consigned to a person duly licensed hereunder to traffic in alcoholic beverages." NY ABC Law § 102(1)(c). Under New York's three-tiered system, permits are issued for "manufacturers, distributors, and retailers."[17] *Bridenbaugh,* 227 F.3d at 851. Out-of-state wineries must, under New York law, participate in New York's three-tier distribution system if they wish to sell wine to New York consumers.

The New York ABC Law also includes (several) significant "exceptions" to the three-tier regulatory scheme which clearly benefit in-state wineries. The exceptions include: (i) a "farm-winery" exception authorizing (licensed) New York farm wineries to ship wine directly to New York consumers;[18] (ii) an exception that allows

---

**17.** "[V]irtually all retail sales of wine to consumers in the state must be made by a licensed retailer...." Defendants' Statement of Facts, dated Aug. 17, 2001 at ¶ 46

**18.** " 'Farm winery' is defined as a winery which is **located on a farm in New York State.** Farm winery licensees must manufacture their wine only from New York State grapes, grown of farms operated by persons having ... at least a 50% financial interest in

the license, and cannot use any grapes grown by a person who does not have a financial interest in the license. Farm wineries are limited to the manufacture of no more than 50,000 finished gallons of wine annually." State Liquor Authority Divisional Order No. 714, ¶ 4, dated Aug. 31, 1976 (emphasis added). *But see Loretto Winery Ltd. v. Gazzara,* 601 F.Supp. 850, 858 (S.D.N.Y.1985) (finding that New York statute allowing only "wine product" made exclusively from in-state

New York wineries to offer "wine by wire services whereby a winery within the state may make deliveries on behalf of other wineries within the state" (§ 76–5); (iii) an exception for New York commercial wineries to obtain retail sales licenses that allows direct sale (and shipment) to consumers (§ 76–4); and (iv) an exception which permits delivery of alcoholic beverages in vehicles owned and operated by the (New York winery) licensee or hired from a trucking company registered with the New York liquor authority (§ 105–9). The obvious purpose and effect of these exceptions is that **"in-state wineries can bypass the middle tier (wholesalers) and the bottom tier (retailers) and sell directly to consumers."** *Beskind,* 197 F.Supp.2d at 467 (emphasis added).

## A. Commerce Clause

"Although the Commerce Clause is by its text an affirmative grant of power to Congress to regulate interstate and foreign commerce, the Clause has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce." *South–Central Timber Dev., Inc. v. Wunnicke,* 467 U.S. 82, 87, 104 S.Ct. 2237, 81 L.Ed.2d 71 (1984). "This negative restriction on state power has often been labeled the 'dormant' Commerce Clause." *USA Recycling, Inc. v. Town of Babylon,* 66 F.3d 1272, 1281 (2d Cir.1995).

The Supreme Court has established a two-step approach to determine whether a state or municipal law violates the dormant Commerce Clause. *See Gary D. Peake Excavating Inc. v. Town Bd. of Hancock,* 93 F.3d 68, 73 (2d Cir.1996). "Under the first step, we determine whether the challenged law 'regulates evenhandedly with only incidental effects on interstate commerce, or discriminates against interstate commerce.'" *Id.* at 73–74 (quoting *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality Comm'n,* 511 U.S. 93, 93, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994)); *see also C & A Carbone v. Town of Clarkstown,* 511 U.S. 383, 390, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994). A state or local law (directly) discriminates if it provides, as the New York ABC law does, for "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *USA Recycling,* 66 F.3d at 1281; *see also Sal Tinnerello & Sons Inc. v. Town of Stonington,* 141 F.3d 46, 55 (2d Cir.1998). Under the second step, i.e. if a regulation is discriminatory, "the burden shifts to the state or local government to show that the local benefits of the statute outweigh its discriminatory effects, and that the state or municipality lacked a nondiscriminatory alternative that could have adequately protected the relevant local interests." *USA Recycling,* 66 F.3d at 1281–82. "When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state interests over out-of-state interests, [courts] have generally struck the statute down without further inquiry." *Brown–Forman Distillers v. N.Y. State Liquor Auth.,* 476 U.S. 573, 579, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986) A discriminatory restriction on commerce is "virtually *per se* invalid." *USA Recycling,* 66 F.3d at 1281 (quoting *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970)).

Defendants contend (unconvincingly) that New York's ABC Law "erects no barrier to the flow of goods and imposes no burden on interstate commerce." Def. Mem. at 14. Defendants argue that the "overwhelming majority of the wine sold in

grapes to be sold in grocery stores was "plain and simple economic protectionism of New York grown grapes ... and a violation of the commerce clause").

New York—93.3%—comes from outside the state," in an effort to show "that the system currently in place does not impede the flow of goods into New York in any way." Def. Mem. at 15.[19]

▮ That the New York direct shipping ban on out-of-state wine burdens interstate commerce and is discriminatory (on its face) is clear from the very wording (let alone the impact) of the exemptions favoring in-state wineries.[20] While out-of-state wineries must consign their products to a (three-tier) wholesaler, in-state wineries do not.[21] Many, if not most in-state wineries fall under one or more of the exceptions to the New York ABC Law.[22] To paraphrase Judge Easterbrook, every drop of (only) out-of-state wine must pass through New York's three-tier system. Wine produced in-state may bypass at least two tiers.[23] The New York regime constitutes a "cut and dry example of direct discrimination against interstate commerce." *Beskind,* 197 F.Supp.2d at 471. That the in-state exemptions may apply to a relatively small portion of the total wine purchased in the state is not dispositive. *See Wyoming v. Oklahoma,* 502 U.S. 437, 455, 112 S.Ct. 789, 117 L.Ed.2d 1 (1992) ("The volume of commerce affected measures only the *extent* of discrimination; it is of no relevance to the determination whether a State has discriminated against interstate commerce.")

The evidence here demonstrates, upon summary judgment, that the exceptions to

19. Defendants take the position that much of the wine sold in New York "comes from outside the state," but also argue that "out-of-state wines do not compete with New York wholesalers or wines." Def. Mem. at 19 (citing *General Motors Corp. v. Tracy,* 519 U.S. 278, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997)). *But see Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 269, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984) ("On the stipulated facts of this case, we are unwilling to conclude that no competition exists between the exempted and nonexempted liquors.")

20. The Court is **not** here ruling that New York's three-tier system (standing alone and apart from its exceptions) is unconstitutional. The Court recognizes that pursuant to the Twenty-first Amendment, the state may adopt reasonable regulations with regard to direct shipments, so long as they are not protectionist. *See, e.g., North Dakota v. United States,* 495 U.S. 423, 431, 110 S.Ct. 1986, 109 L.Ed.2d 420 (1990).

21. Defendants also argue that Plaintiffs have "stipulated away any claim that the in-state delivery options constitute a discriminatory local preference," Def. Mem. 21. That is, Defendants point out that the parties have entered into a written agreement (stipulation) that provides: "Plaintiffs challenge in this case only [NY ABC] §§ 102(1)(a),(c), and (d)." Stipulation dated March 28, 2001 (attached as Exhibit 16 to the Declaration of Randy Mastro dated Aug. 17, 2001 ("Mastro Dec.")). Plaintiffs do not disavow the stipulation, but rather explain that in their view, the exceptions serve to render the direct shipping ban on out-of-state wine in the N.Y. ABC law unconstitutional. Transcript of Oral Argument, dated April 17, 2001 ("Tr.") at 10 ("[T]he defendants have mischaracterized the fact that we are not challenging the exemptions with abandoning any sort of claim with regard to the exemptions.") *See also* Pl. Mem. at 13 n. 16 ("Plaintiffs do not challenge these exemptions. To the contrary, plaintiff consumers benefit from them, and plaintiff winemakers simply wish to share in the opportunities.")

22. "Many if not most New York wineries are farm wineries." Affidavit of Plaintiffs' Expert John Dyson dated May 24, 2001, ¶ 12; *see also* Tr. at 17 ("In fact, there are four different exemptions that cover virtually every winery in the state.") (Plaintiffs' counsel at oral argument).

23. For example, a licensed farm winery, under N.Y. ABC Law § 76–a(6)(d), may direct ship to New York consumers. Similarly, a New York State winery may also become a licensed retailer, and sell wine (and ship directly to consumers) without first consigning it to a wholesaler. *See* N.Y. ABC Law §§ 76(4), 105–9.

the ABC Law provide an impermissible economic benefit and (protection) to only in-state interests—but also that there are nondiscriminatory alternatives available. Indeed, the Defendants explicitly concede the exceptions were intended to be protectionist. *See, e.g.,* State Liquor Authority Divisional Order No. 714, ¶ 4, dated Aug. 31, 1976 ("The [farm winery license] bill, adopted in an effort to aid New York State grape growers, creates a 'Farm Winery License,' specifying a low annual license fee of $125.")[24] At oral argument, the Attorney General acknowledged that economic protectionism was the core purpose of the exceptions. "Your Honor, I believe that the legislative history of that provision [the farm winery exemption] indicates that there was an effort to provide an economic benefit to the local farmers." Tr. at 58. *See also Bacchus Imports Ltd. v. Dias,* 468 U.S. 263, 271, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984) ("Thus, we need not guess at the legislature's motivation, for it is undisputed that the purpose of the exemption was to aid Hawaiian industry.")

Defendants contend (unconvincingly) that out-of-state wineries "could very easily ... get a license here to distribute as either a wholesaler or a winery," which would "cost 'probably a few to maybe 10,000 dollars, counting legal fees' to obtain the license in the first place and then only 'a few hundred dollars a year' to maintain it, to have an office or presence." *See* Tr. at 64 (citing Affidavit of John Dyson). It appears unreasonable to this Court to require that an out-of-state winemaker "become a resident in order to compete on equal terms." *Halliburton Oil Well Cementing Co. v. Reily,* 373 U.S. 64, 72, 83 S.Ct. 1201, 10 L.Ed.2d 202 (1963). "The Supreme Court views 'with particular suspicion state statutes requiring business operations to be performed in the home State that could more efficiently be performed elsewhere. Even where the State is pursuing a clearly legitimate local interest, this particular burden on commerce has been declared to be virtually per se illegal.'" *Santa Fe Natural Tobacco Co. v. Spitzer,* 00 Civ. 7274, 2001 WL 636441, *16 (S.D.N.Y. June 8, 2001) (quoting *South-Central Timber Dev., Inc. v. Wunnicke,* 467 U.S. 82, 100, 104 S.Ct. 2237, 81 L.Ed.2d 71 (1984)).[25]

Most courts that have addressed a statutory structure similar to New York's—i.e. a three-tier system which includes a general ban on the direct shipment of out-of-state wine but also contains "loopholes" in the form of exceptions for in-state wineries—have found the schemes to be per se violations of the Commerce Clause. *See Bainbridge,* 311 F.3d at 1109 ("Florida's regulatory scheme cannot withstand tier-one [dormant commerce clause] scrutiny."); *Beskind,* 197 F.Supp.2d at 471 ("[T]he North Carolina ABC law facially discriminates against out-of-state manufacturers...."); *Bolick,* 199 F.Supp.2d at 409 ("[D]iscrimination occurs as a result of the in-state preference for entry into the market and direct shipment to consum-

---

24. Approximately eighty percent of New York State wineries have farm winery licenses. Of the 110 New York wineries that responded to a National Agricultural Statistics survey, 90 had a farm license and 20 had a commercial license. *See* "Survey of Wineries and Grape Processing Plants," U.S. Department of Agriculture, National Agricultural Statistics Service (released January 24, 2001) *available at* http:// www.nass.usda.gov/ny/bulletin/win- ery/license .htm. ("USDA Survey"), Mastro Dec. Exh. 10.

25. Again, this is not to say that the entire New York three-tier system is unconstitutional or that the State does not "enjoy broad power under § 2 of the Twenty-first Amendment to regulate the importation and use of intoxicating liquor within [its] borders." *Capital Cities,* 467 U.S. at 714, 104 S.Ct. 2694.

ers...."); *Dickerson,* 212 F.Supp.2d at 694 ("Texas' ban on direct importation of wine .... on its face is unconstitutionally and economically discriminatory."); *See also Santa Fe,* 2001 WL 636441 at *14 ("Thus, the statute discriminates on its face against commerce by providing a delivery exemption for New York brick-and-mortar businesses with their own delivery services.") (discussing cigarettes). This Court reaches a similar conclusion. The statutory ban on the direct shipment to New York of out-of-state wine is not "evenhanded" and constitutes a *per se* violation of the Commerce Clause. *See Brown–Forman,* 476 U.S. at 579, 106 S.Ct. 2080.

### B. Twenty–First Amendment

Defendants contend that even if the direct shipping ban on wine were found to be discriminatory, as here, it is "justified 'both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake.'" Def. Mem. at 25 (quoting *Hughes v. Oklahoma,* 441 U.S. 322, 336, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979)). Defendants argue that the direct shipping ban is "a narrowly tailored exercise of the State's police power to control access to alcoholic beverages, to further the interests of public health, welfare and safety, and to promote temperance," and is, therefore, "impervious to [P]laintiffs' 'dormant' Commerce Clause challenge under any level of scrutiny." Def. Mem. at 26. Thus, the Defendants argue that New York's three-tiered system is "saved" by the Twenty-first Amendment. *See, e.g., Bainbridge,* 148 F.Supp.2d at 1310 ("If the statutory

scheme violates the commerce clause, it must then be determined whether it is saved by the Twenty–First Amendment.") Plaintiffs counter that "[o]nly those state restrictions which directly promote temperance may now be said to be permissible under section 2 of the 21st Amendment," Pl. Mem. at 7 (citing *Loretto Winery Ltd. v. Gazzara,* 601 F.Supp. 850, 861 (S.D.N.Y. 1985)), and "that the direct shipment ban cannot be saved by th[is] sole permissible justification." Pl. Mem. at 23. Plaintiffs also argue that the "State has a variety of less-restrictive alternatives available to it." Pl. Reply at 11.

The Court concludes that it is doubtful whether the ABC Laws—and particularly the exceptions—are grounded in the promotion of temperance but that, in any event, viable (socially conscious) alternatives to discrimination against out-of-state wineries are available.[26] The United States Supreme Court has observed that "the State has 'virtually complete control' over the importation and sale of liquor and the structure of the liquor distribution system," and that "the States have the power to control shipments of liquor during their passage through their territory and to take appropriate steps to prevent the unlawful diversion of liquor into their regulated intrastate markets." *North Dakota v. United States,* 495 U.S. 423, 431, 110 S.Ct. 1986, 109 L.Ed.2d 420 (1990) (plurality opinion) (quoting *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.,* 445 U.S. 97, 110, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980)). At the same time, the Twenty-first Amendment does not shield all state regulations from the reach of the Commerce Clause. In fact, the Supreme

---

**26.** While respectfully disagreeing with Defendants' legal position, the Court has paid careful attention to the position of outstanding community leaders such as the Reverend Calvin O. Butts, III (*see* Affidavit, dated Aug. 14, 2001), intervening groups and organizations, and amici such as the City University of New York (*see* Declaration of Frederick P. Schaffer, dated Aug. 14, 2001).

Court has also said that it would be an "absurd oversimplification" to draw such a conclusion. *See Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 331–32, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964). "It is well settled that the Twenty-first Amendment did not entirely remove state regulation of alcohol from the reach of the Commerce Clause." *Brown–Forman*, 476 U.S. at 584, 106 S.Ct. 2080. "Rather the Twenty-first Amendment and the Commerce Clause 'each must be considered in light of the other and in the context of the issues and interests at stake in any concrete case.'" *Id.* (quoting *Hostetter*, 377 U.S. at 332, 84 S.Ct. 1293).

A question here is "whether the principles underlying the Twenty-first Amendment are sufficiently implicated by the exception[s] for [in-state] wine to outweigh the Commerce Clause principles that would otherwise be offended. Or ... asked in a slightly different way, 'whether the interests implicated by a state regulation are so closely related to the powers reserved by the Twenty-first Amendment that the regulation may prevail, notwithstanding that its requirements directly conflict with express federal policies.'" *Bacchus*, 468 U.S. at 275–76, 104 S.Ct. 3049 (quoting *Capital Cities*, 467 U.S. at 714, 104 S.Ct. 2694). **"State laws that constitute mere economic protectionism are ... not entitled to the same deference as laws enacted to combat the perceived evils of an unrestricted traffic in liquor."** *Bacchus*, 468 U.S. at 276, 104 S.Ct. 3049 (emphasis).

Defendants have not shown that New York's ban on the direct shipment of out-of-state wine, and particularly the in-state exceptions to the ban, implicate the State's core concerns under the Twenty-first Amendment. As noted, the exceptions were enacted to "provide an economic benefit to the local farmers." Tr. at 58. There is evidence in the record that the direct shipping ban was designed to protect New York State businesses from out-of-state competition. *See, e.g.*, Governor's Bill Jacket, 1970 Chapter 242, dated Apr. 24, 1970 at 10 (Memorandum from State Liquor Authority) ("It is manifestly unfair to permit these [out-of-state] unlicensed mail-order concerns to compete with New York State Licensees."); *House of York, Ltd. v. Ring*, 322 F.Supp. 530, 533 (S.D.N.Y.1970) ("This law was enacted ... to prevent what was considered to be an unfair and unwise form of competition with New York state licensees, and to eliminate unfair tax advantages to out-of-state mail order firms selling alcoholic beverages to New York residents.") "[O]ne thing is certain: The central purpose of the [Twenty-first Amendment] was not to empower states to benefit local liquor industries by erecting barriers to competition." *Bacchus*, 468 U.S. at 276, 104 S.Ct. 3049.

Defendants argue that the core concerns that support the three-tier system generally would be undermined if the (benefits of) the in-state exceptions were extended to out-of-state wineries. *See, e.g.*, Def. Mem. at 11 ("New York's direct shipping ban has helped keep alcohol from reaching minors, but those gains will be lost if common carriers resume direct shipments to New Yorkers of all ages.") [27] Defendants contend that "the direct shipping ban is the

---

27. Among other evidence, Defendants point to data from the U.S. Department of Health and Human Services in an effort to show that "the incidence of binge drinking is 10.5% higher among all drinkers, and 16.5% higher among minors ages 12 to 17, in 'open' or 'reciprocity' states than in 'three-tier' states."

Def. Mem. at 9 (citing Mastro Dec., Ex. 29). Plaintiffs argue that Defendants "fail to establish any nexus between that problem and wine in general, the types of wine at issue in this case, or direct shipping of wine." Pl. Reply at 8.

only effective means by which the State can control and limit minors' access to alcoholic beverages." Def. Mem. at 25.[28] **The Court believes that the important goals of temperance and prohibiting the sale of wine to minors can be addressed (in a nondiscriminatory manner) for out-of-state as well as for in-state wineries (which are currently able to sell their products over the internet and to ship directly to homes in New York State).** *See, e.g., Bainbridge,* 311 F.3d at 1109 ("Florida could license and regulate out-of-state wineries that intend to ship to Florida consumers through a licensing process similar to that employed with in-state wineries."). As Plaintiffs point out, "the exemption for in-state firms undercuts the defense, for the same safeguards can be taken to ensure compliance of out-of-state products with health and safety concerns." Pl. Mem. at 23–24 (citing *Loretto,* 601 F.Supp. at 862).[29]

Defendants also express concern over the potential for evasion of state liquor taxes if the in-state direct shipping exceptions were extended to out-of-state wineries. Def. Mem. at 25–26. ("The collection of taxes is likewise assured only by requiring that alcoholic beverages be imported into New York by persons who are accountable to the State. . . .") As a threshold matter, it is not entirely clear that the collection of taxes is, in and of itself, a core concern of the Twenty-first Amendment.[30] Assuming *arguendo* that the core interests under the Twenty-first Amendment include raising revenue, a state may not advance that interest by (any) discriminatory means—i.e. if there are "reasonable nondiscriminatory alternatives." *Oregon Waste,* 511 U.S. at 101, 114 S.Ct. 1345. In *Bacchus,* the Supreme Court overturned a Hawaii tax provision that applied a 20 percent excise tax on liquor sold at wholesale, but exempted two locally produced

**28.** *See also* Deposition Transcript of Defendants' Expert Henry Wechsler, dated Oct. 2, 2001 at 60 ("You'd have delivery services. You'd expand the number of alcohol outlets to practically every home in the community. This would make it much harder to get cooperation and training and enforcement of the minimum drinking age.") In response, Plaintiffs point out that Professor Wechsler has never "studied wine consumption or direct shipping" and lacks "any actual knowledge of how direct shipping works or what impact it would have on alcohol consumption patterns." Pl. Reply at 8 n. 24.

**29.** Defendants acknowledge that "third party common carriers" can and currently do verify the age of purchasers to whom they deliver alcoholic beverages. "eVineyards [an online retailer] ensures delivery by an adult 21–years or older by using only state approved common carriers to complete its deliveries. These carriers gather an adult signature at delivery time and submit to eVineyard." Defendants' Statement of Facts, dated Aug. 17, 2001 at ¶ 117.

**30.** While Defendants argue that the United States Supreme Court has found that " 'rais-

ing revenue' is one of the 'unquestionably legitimate' state interests that fall within a state's 'core' power under the Twenty-first Amendment," Def. Reply at 9 (quoting *North Dakota,* 495 U.S. at 432, 110 S.Ct. 1986), Plaintiffs respond that in the Second Circuit, "[o]nly those restrictions which directly promote temperance may now be said permissible under Section 2 of the Twenty-first Amendment." *Loretto,* 601 F.Supp. at 861. In *North Dakota,* Justice Stevens, in a plurality opinion, noted that: "In the interest of promoting temperance, ensuring orderly market conditions, and raising revenue, the State has established a comprehensive system for the distribution of liquor within its borders. That system is unquestionably legitimate." 495 U.S. at 432, 110 S.Ct. 1986. The Court, of course, has no quarrel with that finding—but questions whether each of the interests referenced in *North Dakota* is, standing alone, sufficient to outweigh a discriminatory ban upon the direct shipment of out-of-state wine. Indeed, "[n]o clear consensus concerning the meaning of the provision is apparent." *Bacchus,* 468 U.S. at 274, 104 S.Ct. 3049.

forms of alcohol.[31] 468 U.S. at 265, 104 S.Ct. 3049. The Court found that "the State does not seek to justify its tax on the ground that it was designed to promote temperance or carry out any other purpose of the Twenty-first Amendment, but instead acknowledges that the purpose was 'to promote local industry.'" *Id.* at 276, 104 S.Ct. 3049. Similarly, New York's discriminatory exemptions, which are designed to promote local industry, are not saved because they may impact the raising of revenue. *See id.* ("Consequently, because the tax violates a central tenet of the Commerce Clause but is not supported by any clear concern of the Twenty-first Amendment, we reject the State's ... claim based on the Amendment."); *see also Bainbridge*, 311 F.3d at 111 ("We do not think it is sufficient, however, for Florida to simply show that (a) taxation is a 'core concern' and (b) the three-tier distribution scheme, although discriminatory, promotes its revenue raising goals."); *Beskind*, 197 F.Supp.2d at 474 ("Economic protectionism is not the purpose of this safe harbor from the Commerce Clause.").

The Court does not discern that "the statutes advance 'a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.'" *Cooper v. McBeath*, 11 F.3d 547, 553 (5th Cir.1994) (quoting *New England Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 278, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988)). For one thing, New York currently allows direct shipment of in-state wine in a manner that accommodates the State's concerns for minors, temperance and revenue collection. *See, e.g., supra* n. 29; *see also Dickerson*, 87 F.Supp.2d at 710 ("[T]here is no temperance goal served by the statute since Texas residents can be-

come as drunk on local wines ... as those that ... are in practical effect kept out of the state by the statute.") Defendants' contention that "New York simply has no other effective means to control the unfettered access to alcoholic beverages that would ensue if this direct shipping ban were eliminated," (Def. Mem. at 25) is further contradicted by the facts that: (i) historically direct shipment of out-of-state wine for personal consumption was permitted in New York, *see People v. Ryan*, 274 N.Y. 149, 153, 8 N.E.2d 313 (1937) ("[n]o purpose or intent is found to control their personal use"); (ii) as recently as 1995 the State Legislature was amenable to direct shipping and passed a "reciprocity" bill allowing for direct shipment of wine to New York residents from states that allowed direct shipment of New York wine to their residents, *see* Governor's Veto Jacket, 1995 Veto 76, dated Dec. 27, 1995 at 5; and (iii) very recent (November 2002) federal legislation has authorized direct shipment of wine for personal use, *see* Direct Shipment of Wine, H.R. 2215, 107th Cong., Sec. 11022 (2002) (enacted). The State has not established that its legitimate goals cannot be accomplished in a nondiscriminatory manner. *See. Bolick*, 199 F.Supp.2d at 409 ("The question is whether the state can accomplish its legitimate interests without discriminating against out-of-state direct shippers of wine.... This they have not done.")

**C. Recent Federal Legislation**

Defendants argue that the "new federal Direct Shipping Statute stands as Congress' renunciation of federal interest in all direct shipping bans to the extent they are untouched by this new law."[32] Letter

---

31. The Hawaii statutory scheme, like the New York ABC Law, was originally enacted without exemptions. *Bacchus*, 468 U.S. at 265, 104 S.Ct. 3049.

32. The law, entitled "Direct Shipment of Wine", provides (in part):
   a) CONDITIONS FOR TRANSPORTING CERTAIN WINE.—During any period in

from Howard Graff, dated Nov. 4, 2002. Plaintiffs respond that the "provision has no impact on our claims regarding the impermissibility of New York's direct shipping ban under the dormant Commerce Clause." Letter from Clint Bolick, dated Nov. 8, 2002.

"It is well established that Congress may authorize the States to engage in regulation that the Commerce Clause would otherwise forbid." *Maine v. Taylor*, 477 U.S. 131, 138, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986); *see also Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 154, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982). "But because of the important role the Commerce Clause plays in protecting the free flow of interstate trade, this Court has exempted state statutes from the implied limitations of the Clause only when the congressional direction to do so has been 'unmistakably clear.'" *Taylor*, 477 U.S. at 138–39, 106 S.Ct. 2440 (quoting *Wunnicke*, 467 U.S. at 91, 104 S.Ct. 2237).

▮ It is **not** "unmistakably clear" that Congress intended to exempt New York's ABC Law from the limitations of the Commerce Clause. To the contrary, by its terms, the Direct Shipping Statute applies only to the direct shipment of wine purchased in person at an out-of-state winery during a time when the FAA has imposed safety restrictions and the purchaser would have been able to carry the wine into their home state. *See Wunnicke*, 467 U.S. at 92, 104 S.Ct. 2237 ("A rule requir-

ing a clear expression of approval by Congress ensures that there is, in fact, such a collective decision and reduces significantly the risk that unrepresented interests will be adversely affected by restraints on commerce.") The new law does not insulate New York's direct shipping ban. *See, e.g., Sporhase v. Nebraska*, 458 U.S. 941, 959–60, 102 S.Ct. 3456, 73 L.Ed.2d 1254 (1982) ("Although the 37 [Congressional] statutes and the interstate compacts demonstrate Congress' deference to state water law, they do not indicate that Congress wished to remove federal constitutional constraints on such state laws.")

### D. Privileges and Immunities

Plaintiffs contend that the Privileges and Immunities Clause of the United States Constitution "protect[s] the right[s] of the plaintiff winemakers to pursue their chosen livelihoods free from arbitrary and discriminatory burdens." Pl. Mem. at 9. Specifically, Plaintiffs Juanita Swedenburg and David Lucas, in their individual capacities, *see Swedenburg*, 2000 WL 1264285, at *11, argue that the direct shipment ban impairs their right to sell wine. Pl. Mem. at 9. Defendants opposition is two-fold: (i) "because plaintiffs have no viable 'dormant' Commerce Clause claim, they also have no viable Article IV Privileges and Immunities Clause claim," Def. Mem. at 29; and (ii) "the State has 'substantial' and 'perfectly valid independent' reasons for

which the Federal Aviation Administration has in effect restrictions on airline passengers to ensure safety, the direct shipment of wine shall be permitted from States where wine is purchased from a winery, to another State or the District of Columbia, if—
(1) the wine was purchased while the purchaser was physically present at the winery;
(2) the purchaser of the wine provided the winery verification of legal age to purchase alcohol;

(3) the shipping container in which the wine is shipped is marked to require an adult's signature upon delivery;
(4) the wine is for personal use only and not for resale; and
(5) the purchaser could have carried the wine lawfully into the State or the District of Columbia to which the wine is shipped.

H.R. 2215, 107th Cong., Sec. 11022 (2002) (enacted).

requiring out-of-state wine products to be distributed [in New York] only through licensed in-state wholesalers." *Id.*

In view of the Court's determination that the New York ban on the direct shipment of out-of-state wine violates the Commerce Clause, and the limited briefing on the Privileges and Immunities question, there is no need for the Court further to address this claim. *See, e.g., Barringer v. Griffes,* 1 F.3d 1331, 1332 (2d Cir.1993).

### E. First Amendment

Plaintiffs contend that ABC Law § 102(1)(a) "is a sweeping regulation of speech" and "is blatantly unconstitutional." Pl. Mem. at 28. Defendants counter that the provision is a "narrowly tailored restriction on commercial advertising for alcoholic beverages [that] is plainly aimed at preventing the *unlawful* solicitation of orders for direct shipments of alcohol to New York residents by unlicensed suppliers." Def. Mem. at 29 (emphasis in original). Having concluded that New York's ban on direct shipment of wine into the state is unconstitutional, Section 102(1)(a) may similarly, going forward, be read to prohibit lawful solicitations on behalf of out-of-state wineries—and needs to be revised.

### F. Appropriate Remedy

At the Court's request, following oral argument the parties submitted (additional) briefing on the question of whether (or not) the Court should strike down the protectionist in-state direct shipping excep-

tions to the New York ABC Laws if it found a violation of the Commerce Clause.[33] Defendants' counsel, including the Attorney General, argue that the Court should "sever and invalidate only those few provisions of New York's ABC Law that permit any in-state direct shipment options and otherwise preserve New York's constitutional 'three tier' system." Defendants' Memorandum on Remedy, dated April 19, 2002.[34] Plaintiffs ask the Court to "establish a truly level playing field" and "strike down the trade barrier and allow out-of-state wineries to ship on the same terms and conditions as in-state wineries." Letter from Clint Bolick, dated April 19, 2002.

"Where a statute is defective because of underinclusion ... there exist two remedial alternatives: a court may either declare [the statute] a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by the exclusion." *Califano v. Westcott,* 443 U.S. 76, 89, 99 S.Ct. 2655, 61 L.Ed.2d 382 (1979) (quoting *Welsh v. United States,* 398 U.S. 333, 363, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970) (Harlan, J. concurring)). "Though the Court has stated that 'extension rather than nullification is the proper course,' the question is ultimately one of legislative intent." *Soto–Lopez v. New York City Civ. Serv. Comm'n,* 755 F.2d 266, 280 (2d Cir.1985) (citations omitted).

---

**33.** The New York ABC Laws provide that if "any part, provision or section of this chapter or the application thereof to any person or circumstances shall be held invalid by any court of competent jurisdiction, the remainder thereof or the application of such part, provision or section to any other person or circumstances shall not be affected thereby." NY ABC § 161.

**34.** Defendants point out that New York retains the "constitutional right to remedy the assumed discrimination by eliminating the instate advantage." Defendants Memorandum or Remedy, dated April 19, 2002 at 7 (citing *McKesson Corp. v. Div. of Alc. Bev. and Tob.,* 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990)).

The Court's "task is to discern what course the Legislature would have chosen to follow if it had foreseen our conclusions as to underinclusiveness." *People v. Liberta*, 64 N.Y.2d 152, 170, 474 N.E.2d 567, 578, 485 N.Y.S.2d 207, 218 (1984). "The question is in every case whether the Legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the valid part exscinded, or rejected altogether." *People v. Knapp*, 230 N.Y. 48, 60, 129 N.E. 202, 207 (1920) (Cardozo, J.); *see also Gary D. Peake*, 93 F.3d at 72 ("the presence of a severability clause is not dispositive").

The record here—which reflects an earlier version of the New York ABC Law allowing direct shipment into New York for limited personal use and the Legislature's effort in 1995 to allow direct shipment on a reciprocal basis—suggests the route the Legislature might take. And, severing the ABC Law exceptions might impose economic hardships on New York State wineries which the Legislature may be reluctant to do.[35] *See* Letter from Clint Bolick, dated April 19, 2002; *see also* USDA Survey ("In all but one region [of New York State], sales of wine directly to consumers was the predominant type of sales, generating the largest percentage of total sales dollars.")[36] Elimination of the direct shipping ban rather than elimination of the ABC Law exceptions may be the appropriate remedy. *See Nguyen v. INS*, 533 U.S. 53, 95–96, 121 S.Ct. 2053, 150 L.Ed.2d 115 ("The choice of extension over nullification also would have the virtue of avoiding injury to parties who are not represented in the instant litigation.") (Scalia, J., concurring); *See also Bolick*, 199 F.Supp.2d at 416 ("Declaring unconstitu-

tional and enjoining the enforcement of each of the challenged statutes effects the intent of the legislature, serves the interests of the consumer and the dormant Commerce Clause, and preserves the police powers of the Commonwealth to further its legitimate interests under the ABC regime."); *Beskind*, 197 F.Supp.2d at 476 ("Defendants are enjoined from enforcing state laws ... that prohibit or punish out-of-state wine dealers from directly shipping wines to adult North Carolina residents."); *Dickerson*, 212 F.Supp.2d at 696 ("[T]he Court, in the final judgment ... will enjoin the State of Texas from enforcing these statutes and defer to action by the legislature to repair the Alcoholic Beverage Code.")

The Court would like to have additional input from the parties before deciding the issue of remedy, and will hold a conference for this purpose on December 5, 2002 at 11 a.m. in Courtroom 706 of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York. The parties are requested forthwith to "meet and confer" to determine whether consensus can be reached with respect to remedy. Additional briefing, which may become useful, is not called for at this time.

## VI.  Conclusion

For the aforementioned reasons, Plaintiffs' motion for summary judgment [58] is granted and Defendants' motion for summary judgment [65] is denied.

---

**35.**  It would be helpful to hear from the Attorney General on this issue.

**36.**  These factors distinguish this case from *Loretto,* in which the Second Circuit found

that certain preferences for New York State wine coolers could not stand "for even sixty days [more]." *Loretto,* 761 F.2d at 141.